Argued July 25; decided August 5, 1895.

# EDDY v. KINCAID.

[41 Pac. 157.]

28  537
30  413
30  417

28  537
f34   27

28  537
41  572
28  537
46  372
47  590

1. CONTEMPORANEOUS CONSTRUCTION OF CONSTITUTION. — Where a certain construction has been placed on a constitution by a series of legislative acts, and that construction has been for a long time accepted by the people and the different departments of government, the courts will hesitate to depart from it; such a practical exposition is often of controlling influence:* Cline v. Greenwood, 10 Or. at page 240, approved and followed.

2. LEGISLATIVE POWER TO APPOINT RAILROAD COMMISSIONERS — CONSTITUTIONAL LAW — CODE, § 4003. In view of the fact that the Oregon legislature has from the organization of the state created numerous public offices and appointed persons to fill them, and that the state constitution contains no express inhibition against the exercise of such power by the legislature, the court feels bound to now hold that a section 4003, Hill's Code, which vests in the legislature the power to appoint railroad commissioners, is constitutional: Biggs v. McBride, 17 Or. 640, and State v. George, 22 Or. 152, approved and followed.

3. TENURE OF OFFICE OF RAILROAD COMMISSIONER. — In view of the provision in article XV, section 1 of the state constitution, that "all officers shall hold their offices until their successors are elected and qualified," and the further proviso in the act creating the board of railroad commissioners that such officers "shall hold their office for and during the term of two years and until their successors are elected and qualified as in this act provided," it necessarily follows that the failure of the legislature to elect a successor to a railroad commissioner at the expiration of his term of office does not create a vacancy, and the incumbent is entitled to the emoluments of such office until his successor is duly elected: State v. Simon, 20 Or. 365, approved and followed.

4. FAILURE OF APPOINTIVE OFFICER TO GIVE BOND. — The mere failure of an officer rightfully holding over by virtue of the express provisions of the law creating the office, to renew his bond, does not of itself work a forfeiture of the office so as to deprive him of its emoluments.

5. REPEAL BY IMPLICATION — STATUTORY CONSTRUCTION. — The Australian Ballot Law of eighteen hundred and ninety-one, (Laws, 1891, p. 8,) section 1 of which fixes the date of the general election at which certain named officers and "all other state, district, county, or precinct

* In addition to the case cited by the court, the following Oregon cases will be found in point sustaining the present decision: Crawford v. Beard, 12 Or. 447 (8 Pac. 537); Kelly v. Multnomah County, 18 Or. 359 (22 Pac. 1110). — REPORTER.

28 Or.—38.

officers provided by law" shall be elected, does not repeal by implication section 4003 of Hill's Code providing for the election of railroad commissioners by the legislature, even if it is in conflict with the Code section, because this section is but a reënactment of a law that existed long prior to the creation of the board of railroad commissioners.

APPEAL from Marion: H. H. HEWITT, Judge.

This is a proceeding by mandamus to compel Harrison R. Kincaid, who is secretary of state, to draw a warrant on the state treasurer for the balance of salary alleged to be due James B. Eddy as railroad commissioner for the quarter ending March thirty-first, eighteen hundred and ninety-five. The act creating the board of railroad commissioners provides that the persons constituting such board shall be chosen biennially by the legislative assembly, and "shall hold their offices for and during the term of two years, and until their successors are elected and qualified as in this act provided, and if a vacancy occurs by resignation, death, or otherwise, the governor shall appoint a commissioner to fill such vacancy for the residue of the term:" Hill's Code § 4003. In compliance with the provisions of this statute, the legislature of eighteen hundred and ninety-three regularly elected plaintiff as one of the commissioners, and he immediately thereafter qualified and entered upon the discharge of his duties, and has continued so to act. The legislature of eighteen hundred and ninety-five, although making the necessary appropriation to pay the salary and expenses of the commissioners, failed and neglected to choose a successor to plaintiff, and by reason thereof and the provisions of the law under which he was chosen he now claims the right to hold the office and receive its emoluments until a successor shall be regularly chosen in the manner provided by

law.   The defendant, the secretary of state, however,
being in doubt as to the plaintiff's right to the office,
refuses to draw a warrant in payment of his salary
as such commissioner, and suggests as reasons for his
refusal: (1) That so much of the act creating the
commission as provides for the election of the mem-
bers thereof by the legislature is unconstitutional and
void, and therefore plaintiff was never legally elected
to such office; (2) that, if plaintiff was legally elected
in eighteen hundred and ninety-three, the failure of
the legislature to elect his successor in eighteen
hundred and ninety-five created a vacancy in the of-
fice, which must be filled by appointment by the gov-
ernor; (3) if he is in error in both of these posi-
tions, he claims that the failure of plaintiff to renew
his official bond, *ipso facto*, worked a forfeiture of the
office; and (4) that so much of the act as provides
for the election of railroad commissioners by the leg-
islature is repealed by implication by the act known
as the "Australian Ballot Law." The defendant de-
murred to the complaint because the facts therein
stated did not entitle the plaintiff to any relief, and
appealed from the order overruling his demurrer and
making the writ peremptory.               AFFIRMED.

For appellant there was an oral argument by *Mr.
Frank V. Drake,* and a brief urging these points.*

So much of the acts of the legislative assembly
as assumes to confer upon the legislature authority
or right to elect the railroad commissioners is un-
constitutional,—*first,* because it is opposed to the

*The attorney-general did not appear for the secretary of state in this case
because he had previously furnished to the governor a written opinion on the
very question here involved, in which he expressed the view that the railroad
commissioners were lawfully holding over, and that there was no authority for
appointing their successors.—REPORTER.

spirit and genius of our institutions. The people of Oregon originally had, and they have reserved and retained, the right to nominate and select, by vote, all their public servants; *second,* by express prohibition, article III of their constitution, those sovereigns of the state forbade the exercise of executive or administrative powers by the legislature; *third,* the legislature is prohibited by the same fundamental law from passing special laws for the election of state, county, or district officers. These three subdivisions of our first point are connected and associated with a general fundamental principle, namely, that the people of this country, in organizing their new government, resolved that they, as sovereigns, would delegate to representatives specified powers only; that those representatives should be divided into three independent classes, and that all powers not delegated remained with the sovereigns, the people. They were jealous and afraid of solidarity of governmental power in a few hands. The citizens of the State of Oregon could have elected to enact laws for their government by direct legislation. They chose the representative form and bestowed this power on the legislative assembly. They conferred on that assembly no other function: Sedgwick on Constitutional and Statutory Law (2d ed.), 132.

Referring specifically to the first subdivision of the first point, we submit that the express declarations and reservations in our constitution confines the power of election to public office to the people, acting in their politico-executive capacity, viz.: Article I, section 1, all power is inherent in the people, and all free governments are founded on their authority. Article II, section 1, all elections shall be free and equal; section 2, all qualified citizens are entitled to vote at all elections authorized by law; sections 2, 4, 5, 6, 7, and

8 define the qualifications of electors; section 8, the legislative assembly shall enact laws to support free, unrestrained suffrage of the people (not enact a law by which the legislators may elect); section 14, general elections shall be held on the first Monday of June, biennially; section 17, all qualified electors shall vote in their respective places of residence. So we contend that the constitution inhibits the legislature from attempting to elect any officer of the state, or connected with the state government proper, save that each house, when assembled in session, may elect its own officers, to serve it while in session, as provided in article IV, section 11. No authority appears anywhere in that instrument for the election of any officer in joint session. This high political function belongs to the sovereignty, where, primarily, rested all power, and which may at any time be resumed by the people. This basic principle must not be lost sight of. Further still, the legislature cannot by indirection obstruct or limit the sovereigns in the exercise of the right of suffrage. The right to participate in the selection of public servants or agents is of the highest nature. The citizen has the same transcendent right to express his choice in the selection of judicial, administrative, or executive officers as to declare his preference for a legislative officer. The legislative body has no more power to assume this function of selection than it has to place requirements on the elector beyond those fixed by the constitution: *White* v. *Commissioners,* 13 Or. 317 (57 Am. Rep. 20); *Bourland* v. *Hildreth,* 26 Cal. 215; *Page* v. *Allen,* 58 Pa. St. 338 (48 Am. Dec. 272); *Day* v. *Jones,* 31 Cal. 261.

The legislative assembly has no authority to appropriate the powers usually exercised through the elective franchise. The framers of our constitution,

*ex industria,* declared against such attempt, not only in
the provisions for elections before quoted, but in the
phraseology and terms adopted in article III. In dis-
tributing the powers of government among their rep-
resentatives, they were careful to declare that neither
the legislative or judicial departments should exercise
any of the duties of the executive, including the ad-
ministrative. Here all power touching the active ad-
ministration of the government and its laws are
vested in the executive-administrative department.
The people, in the first instance, have the right to se-
lect their servants in that department, and in cases of
vacancies, their chief representative in that depart-
ment may make temporary appointment, until the
sovereigns shall meet again in their constitutional bi-
ennial elections. This was the design: this was the
purpose. It is the only means by which the people
can express their choice, or participate in the affairs
of the government of the state, and must so continue,
unless they choose to adopt other systems, or unless
their prerogatives be assumed by a few persons while
temporarily filling the office of legislator, and the
people submit. The election of a state officer does
not involve legislative functions; it is a distinct and
independent prerogative, distinctly administrative in
character: Cooley on Constitutional Limitations (5th
ed.), 105–111; *State* v. *Hyde,* 121 Ind. 20; *State* v. *Peele,*
121 Ind. 495; *State* v. *Gorby,* 122 Ind. 17; Mechem on
Public Officers, §§ 104–107; *State* v. *Kennon,* 7 Ohio St.
546; *People* v. *McKee,* 68 N. C. 429; *State* v. *Denny,* 118 Ind.
457; *City* v. *State,* 118 Ind. 427; *People* v. *Bull,* 46 N. Y. 57
(7 Am. Rep. 302); *White* v. *Commissioners,* 13 Or. 317 (57
Am. Rep. 20); *Taylor* v. *Commonwealth,* 3 J. J. Marshall,
404; *McGregor* v. *Baglin,* 19 Iowa, 43; Story on Constitu-
tion (5th ed.), Vol. I, §§ 520, 521, 523, and 525.

The legislature is by constitutional inhibition prohibited from passing special or local laws "providing for opening and conducting the election of state, county, or township officers." Plaintiff sues as an incumbent of a public office for the salary of a public office, and claims that he was elected by the legislative assembly assembled at the capitol in the month of February, eighteen hundred and ninety-three, for the term of two years, and until his successor should be elected and qualified. He declares that he is entitled to an annual salary to be paid out of the public treasury by warrants to be drawn thereon by the secretary of state, defendant here. Defendant's contention, in addition to all that has been said before, is that the legislature had no authority to provide for opening or conducting such an election at the capitol, for the special purpose of electing any state officer: Constitution, Art. IV., § 23, ¶ 13; *Morrison* v. *Bachert,* 112 Pa. St. 322; *Maxwell* v. *Tillamook County,* 20 Or. 495, and cases therein cited; *People* v. *Cooper,* 83 Ill. 585; *Page* v. *Allen,* 58 Pa. St. 338 (48 Am. Dec. 272); *State* v. *Herrmann,* 75 Mo. 340; *State* v. *Denny,* 21 N. E. 257, 274; *Davis* v. *Cook,* 84 Ill. 590; *City of Evansville* v. *State,* 21 N. E. 267; *State* v. *The Judges,* 21 Ohio St. 11; *State* v. *Mitchell,* 31 Ohio St. 529; *State* v. *Hammer,* 42 N. J. Law, 435; *State* v. *Boise,* 39 N. E. 64 (40 N. E. 113). This act is special because it provides for an election of one portion of the state's officers by a method different from the election of other state officers. An act which necessarily produces a result forbidden by the constitution cannot be upheld, whatever its form or profession: *People* v. *Cooper,* 83 Ill. 585; *Commonwealth* v. *Patton,* 88 Pa. St. 258; *Couteri* v. *New Brunswick,* 44 N. J. Law, 58; 3 Am. and Eng. Ency. of Law, p. 674.

The genius of our institutions, as now formulated, is crystalized in one central principle, namely, that the people of the state shall, at regular intervals prescribed by law, select their servants to discharge, for limited periods only, high and responsible representative duties. It is the sovereign will, declared by ballot, by which certain citizens of the state are selected and transformed into officers possessing all these varied powers of government. This is a grave and momentous matter in which the sovereign voice alone should be heard. It is the primal and basic principle of our governmental fabric. Choice of public officers is the only means by which the people participate in the administration of our government. This participation is indirect, limited at best, and ought not to be restricted by legislatures acting in excess of their department. The people are sovereigns, and under our system and our constitution they only possess the prerogative of selecting public officers within the state. If the act had provided that the railroad commissioners should be elected by vote of the enrolled militia, or by the members of the trades unions, or by the farmers of the state, or the bankers, or by the various boards of county commissioners assembled at a given time at the seats of their several counties, could such enactment be held to be a compliance with the spirit or terms of our constitution? When the individual members of the legislature declare their vote for an incumbent of a public office in recurring biennial sessions, are they exercising legislative functions? When, ten years hence, members of the legislature vote for railroad commissioners at Salem, will the act constitute. a part of the legislation of eighteen hundred and eighty-seven, whereby the office was created? Or, will the act of voting for a commissioner ten years

hence be considered as an "amendment" to the acts of eighteen hundred and eighty-seven or eighteen hundred and eighty-nine? The principle for which defendant contends arose in the recent case of *In re Sims,* 87 Pac. 135.

The Australian Ballot Law (Laws, 1891, p. 8,) provided a complete system for the election of all state officers, and supersedes the provisions for the election of certain officers by the legislature. Conformably to the spirit and terms of our constitution before referred to the legislature of the state at its session in eighteen hundred and ninety-one, (Session Laws, 1891, p. 8,) passed an act providing for the election of all state, district, county, and precinct officers provided by law. Section 1 of the act declares that "A general election shall be held in the several election precincts in this state, on the first Monday in June, eighteen hundred and ninety-two, and biennially thereafter, at which there shall be chosen so many of the following officers as are to be elected in such year, namely," (here naming several state officers, including "justices of the supreme court,"  *  *  * circuit judges, members of state senate, and other state and county officers,) "and all other state, district, county, and precinct officers provided by law." One only of the justices of the supreme court, and a portion only of the judges of the circuit court were to be elected in that year, hence, the use of the phase in section 1, "So many of the following officers as are to be elected in such year." The election of all classes of officers at regularly recurring general biennial elections was thus provided for. Section 9 of the same act also provides that "all general or special elections hereafter held in this state shall be conducted under

28 OR.—39.

the provisions of this act." And the act thereupon prescribes in detail the time, places, and proceedings for the conduct of all such elections. Section 72 repeals certain specified acts, "and all acts and parts of of acts in conflict with this act." By this act the purpose and letter of the constitution is accomplished and fulfilled. It forms a system harmonious and consistent with the fundamental law. The attempt of the legislature to provide for a special election of a part of the state officers by less than one hundred of the electors of the state, at a place other than as defined in the fundamental law, is not only in conflict with that law, but in conflict with the later legislative act. This general law, governing and controlling all elections in the state, is "an act of the legislature, * * * original in form and complete in itself, exhibiting on its face what the law is to be, its purpose and scope, is valid, notwithstanding it may affect, change, or modify some other law upon the same subject": *Warren* v. *Crosby,* 24 Or. 561, 562; *Little* v. *Cogswell,* 20 Or. 345, and cases there cited. Like the case of *Warren* v. *Crosby,* in 24 Or. the effect of this latest act is to repeal, *pro tanto,* former legislation (special legislation) on a subject common to both. It is the last expression on the subject of election of state officers, and must control. We invoke the rule enforced in the case of *Warren* v. *Crosby,* overruling *State* v. *Wright,* 14 Or. 369, and specially refer to so much of the opinion as appears on pages 568 and 569, 24 Or.: Cooley on Constitutional Limitations, 152. The period of commencement of the term of the railroad commission is not fixed in the act creating that office. The constitution and the statutes, now harmonious, fix the periods of recurring biennial elections in the month of June. The people did not elect any railroad

commissioners in eighteen hundred and ninety-four; the legislature did not attempt to elect in eighteen hundred and ninety-five, it had no authority so to do; the governor has made no appointment. Defendant insists that there is no incumbent entitled to a salary. The office is vacant—a house without a tenant.

The act under which petitioner claims his salary, (Laws, 1889, p. 22,) is unconstitutional, as in violation of article IV, sections 20 and 22 of the state constitution. The original act creating the board of railroad commissioners, (Session Laws, 1887, p. 30,) was entitled "An act to create and establish a board of railroad commissioners, and to define and regulate its powers and duties, and to fix the compensation of its members." This act created a board of two persons, to be appointed by the governor, to hold office for the term of four years, and enacted that at the session of the legislature next preceding the expiration of such term, the governor, during such session, should, by and with the advice and consent of the senate, appoint successors, to serve four years. In eighteen hundred and eighty-nine, (Session Laws, 1889, p. 22,) an "amendatory" act was passed under the following title: "An act to amend an act entitled 'An act to create and establish a board of railroad commissioners, and to define and regulate its powers and define its duties, and to fix the compensation of its members,' approved February eighteenth, eighteen hundred and eighty-seven, and being chapter LXXIII of the General Laws of Oregon," as compiled and annotated by William Lair Hill. This last act then purports in terms to amend section 1 of "said act to create and establish a board of railroad commissioners, * * * being section 4002 of the General Laws of Oregon," as compiled by William Lair Hill,

so as to read as follows: "Section 4002. There shall be and is hereby established for the State of Oregon a commission    *    *    *    to consist of three persons." The last named act then purports to amend section 2 of the original act, "being section 4003 of the general laws" as compiled, so as to read as follows: "Section 4003. Said commissioners    *    *    *    shall be chosen biennially by the legislative assembly of the State of Oregon, and shall hold their office for and during the term of two years and until their successors are elected and qualified as in this act provided, and if a vacancy occurs by resignation, death, or otherwise, the governor shall appoint a commissioner to fill such vacancy for the residue of the term." The last act then purports to amend section 6 of the original act, fixing the compensation of the members. Then repeals section 24 of the original act (General Laws, § 4025). Then follows an "emergency clause."

Article IV, section 20 of the constitution, enacts: "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." Section 22 of the same article is as follows: "No act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length." Defendant calls attention to the fact that neither the above requirements has been observed in the acts referred to, and claims that so much of said acts as relate to election of railroad commissioners is void. In the title to the first act no intimation is given of the subject of appoint-

ment or election to the office. In the title to the last act no intimation is given of intention to amend or repeal any specific section of the former act, or to provide for an election of commissioners by the legislature of the state. At the time of the passage of these acts, the general election laws of the state (chapter XIV, title I, 2 Hill's Compilation, 1170,) then in force, contained provisions for general elections to be held in the several election precincts of the state "on the first Monday in June, eighteen hundred and eighty-six, and biennially thereafter," for choosing "a governor, (and the various state, county, and precinct officers,) and all other state, district, county, and precinct officers provided by law." Then followed, in detail, the methods of preparing for, opening, conducting, ascertaining, and declaring the results of such election. All this was in substantial compliance with the mandates of the constitution. So that the time and methods of election of the "commissioners" had been fixed by the constitution and statutes prior to the creation of the board of railroad commissioners, and were in force when both the original and amendatory acts, creating the office of railroad commissioner, were passed. It follows that the matter of election of the commissioners was not necessarily or "properly" (using the words of the constitution) connected with the subject of the "act to create and establish the board, define and regulate its powers, and fix compensation." It was not essential to the act, or necessary. The commissioners could have been elected at the general election and their "term of office" would have begun, under section 2557, Compiled Laws, then in force (2 Hill's Compilation, 1170). With the election laws thus in force, no one would suppose, from reading the title "to create a board, regulate and define its powers and duties, and fix its

compensation," in the original act, or the title of the amendatory act, that the legislature intended to disregard or repeal the general law touching elections, or to assume the functions of electors, while acting in the capacity of legislators. Applying the test stated in 25 Or. 506, "whether, taking from the title the subject, we can find anything in the bill which cannot be referred to that subject," we submit that the election of railroad commissioners by the legislators instead of by the people, under the laws then in force, cannot be referred either to "creation of the board," or to "defining and regulating its duties and powers," or to "fixing the compensation" of the members of the board. For these reasons we claim that so much of the act as provides for the election of the board by the members of the legislature is unconstitutional and void. The constitution of Indiana and Texas, in the particulars referred to, are identical with that of Oregon, and some analogous cases from those states, and others, are submitted, namely: *State* v. *Bowers,* 14 Ind. 195; *Igoe* v. *State,* 14 Ind. 239; *Mewherter* v. *Price,* 11 Ind. 199; *City of San Antonio* v. *Gould,* 34 Texas, 49; *Giddings* v. *Antonia,* 47 Texas, 548 (26 Am. Rep. 321); *Smails* v. *White,* 4 Neb. 353; *City of Tecumseh* v. *Phillips,* 5 Neb. 305; *White* v. *City of Lincoln,* 5 Neb. 505; *People* v. *Denaby,* 20 Mich. 349; *Evans* v. *Memphis, etc., Railway,* 56 Ala. 246 (28 Am. Rep. 771); *Beekert* v. *Alleghany City,* 85 Pa. St. 191; *Ryerson* v. *Utley,* 16 Mich. 269.

The pretended term of two years for which plaintiff claims he was elected, expired on the twenty-third day of February, eighteen hundred and ninety-five, at the farthest, that being the date on which the biennial session of the legislature of eighteen hundred and ninety-five adjourned sine die. The legislature did not elect in eighteen hundred and ninety-five.

These conditions were held to create a vacancy in *Frils* v. *Kuhl*, 51 N. J. Law, 191; *People* v. *Reid*, 6 Cal. 288; *People* v. *Baine*, 6 Cal. 519; *People* v. *Miser*, 7 Cal. 519; *People* v. *Langdon*, 8 Cal. 1. See opinion of Justice FIELD in *People* v. *Whitman*, 10 Cal. 39, at page 46 *et seq.*, and in *People* v. *Tilton*, 37 Cal. 614. The case of *People* v. *Reid*, was overruled by a divided court, two out of five judges dissenting. See dissenting opinions. That the express term of two years is a limitation of the tenure of office of the incumbents, and that the qualification or contingency "until successors are elected and qualified" is intended to provide for brief intervals only—interregnums occurring by reason of varying dates in election years rather than a right to hold for two terms. See *County* v. *Bigham*, 10 Iowa, 39, 43; *County* v. *Ring*, 29 Minn. 405; *Chelmsford* v. *Demarest*, 7 Gray, at page 3; *State* v. *Cocke*, 54 Texas, 482 (citing dissenting opinion of FIELD in 10 Cal. 48, and dissenting opinion in *State* v. *Lush*, 18 Mo. 345, which see, and numerous cases cited under the next succeding point). Finally, the contentions arising in this case did not arise, nor were they presented or passed upon in *Biggs* v. *McBride*, or *Everding* v. *Simon*, or *State* v. *George*.

One asserting rights to emoluments of office must show, when properly challenged, (1) that he was and continues to be eligible; (2) that he has been duly and legally elected; and (3) that he has qualified as the law requires. The constitution (article V, section 3) requires that "every person elected or appointed to office shall, before entering on the duties thereof, take an oath to support the constitution of the United States, the constitution of Oregon, and an oath of office. Section 4006 of the statutes, in like terms, requires that persons elected as commissioners before entering, etc., must make oath and file it with the sec-

retary of state, and before entering on the discharge of his duties shall also execute a bond with security to be approved by the governor in the sum of ten thousand dollars, and file it with the secretary of state. And section 2551 of the statute declares that a failure or neglect to give or renew official bonds or to deposit oath or bond in the time required by law, shall create a vacancy. The oath required of a railroad commissioner must set forth, among other things, that he will faithfully discharge his duties; that he owns no railway stock or bonds; is not an officer, attorney, agent, or employé of such corporation, and has no pecuniary interest therein: Section 4006. The term of office is two years, and they shall be elected biennially: Section 4003. Biennial elections are held in June, as prescribed by the constitution and the statutes concerning elections. Now, notwithstanding all favorable presumptions, it is quite possible (1) that a person could take that oath in eighteen hundred and ninety-three, and not be able to do so in eighteen hundred and ninety-five; and (2) he might be able to furnish security in the state in the sum of ten thousand dollars in eighteen hundred and ninety-three and fail utterly to do so in eighteen hundred and ninety-five. His sureties may have been responsible in eighteen hundred and ninety-three, and be insolvent in eighteen hundred and ninety-five. The sureties on his bond filed in eighteen hundred and ninety-three are not liable for defaults or omissions for four years. They became surety for one term only — two years. The state has demanded the oath and the bond as security for itself and its citizens, and as a prerequisite to occupancy of the office and payment for services rendered therein. More than two years have elapsed since the petitioner filed his

oath and bond as a railroad commissioner. The legislature in the mean time has convened in regular biennial session and adjourned. No one has been elected by the people or the legislature to succeed the petitioner. He has not renewed either oath or bond, but demands a salary. The secretary refuses payment. Petitioner assumes that, under the circumstances, his is a continuing term; that it embraced four years, and that the oath and bond filed by him on February eighteenth, eighteen hundred and ninety-three, are efficacious still, and give him title to the office and salary.

That the legislative intent was to fix the term at two years is so clearly manifested by the expressed term of two years, and the provision for biennial elections set forth in the original act, (section 4003,) and the subsequent amendatory act of eighteen hundred and ninety-one, (Session Laws, 1891, § 1, p. 9,) as to be fairly indisputable. The phrase "and until their successors are elected," etc., is but a common provision for an interregnum likely to occur between two "terms." It was not intended to operate as creating a term of four years. This phraseology has been under the consideration of the courts in numerous and some well considered cases, and the weight of reason and authorities are, we think, decidedly with the position taken by the defense in this case: *County of Wapello* v. *Bigham,* 10 Iowa, 39; *Mayor* v. *Crowell,* 40 N. J. Law, 207; *Dover* v. *Twombly,* 42 N. H. 59. The bond filed by petitioner on February eighteenth, eighteen hundred and ninety-three, under his alleged election by the legislature in eighteen hundred and ninety-three, cannot be enforced for the present (assumed) "extended" term. Except for past delinquencies, if any, it is *functus officio.* As to sureties, the rule *strictissimi juris*

always applies. The sureties on executing the bond were justified in relying upon the expressed term of two years, and in relying upon the presumption that the legislature (or the people under the act of eighteen hundred and ninety-one) would elect a successor to their principal on the bond. The provisions of the statute were, by operation of law, incorporated into the terms of their contract as sureties. No recovery for future delinquencies can be recovered on that bond: *Chelmsford* v. *Demarest*, 7 Gray, 1; *Bigelow* v. *Bridges*, 8 Mass. 274; *County of Wapello* v. *Bigham*, 10 Iowa, 39; *Mayor* v. *Crowell*, 40 N. J. Law, 207; *Dover* v. *Twombly*, 42 N. H. 59; *State Treasurer* v. *Mann*, 34 Vt. 371 (the authorities are reviewed in this case in a lengthy opinion); *King County* v. *Ferry*, 5 Wash. St. 536; *Norridgewock* v. *Hale*, 80 Me. 363; *Jackson* v. *Ring*, 29 Minn. 398; *Welch* v. *Seymour*, 28 Conn. 387; *Harris* v. *Babbitt*, 4 Dillon (Cir. Ct.), 186; *Brown* v. *Lattimor*, 17 Cal. 93; *Winnieshiek County* v. *Maynard*, 44 Iowa, 15; *Miller* v. *Stewart*, 9 Wheaton, 681; *United States* v. *Kirkpatrick*, 9 Wheaton, 720.

Qualification for office when required by law is a prerequisite, a condition precedent, to the right of office: *United States* v. *LeBaron*, 19 U. S. (How.), 73, p. 78; *Jump* v. *Spence*, 28 Md. 1; *Thomas* v. *Owens*, 4 Md. 189. The statute, as before stated, requires an oath of one first duly elected, which oath must disclose certain facts. Unless the facts exist in his favor he is disqualified — not eligible. The state demands a good and sufficient security for the faithful discharge of duty, and the statute makes this security also a prerequisite. Failure to furnish one or both of these operates as a defeasance — causes a vacancy: Opinion of Justices, 14 Fla. 277; *State* v. *Cocke*, 54 Texas, 482; *State ex rel.* v. *Matheny*, 7 Kan. 327; *Rounds* v. *Bangor*, 46 Me. 541 (74 Am. Dec. 469); *Falconer* v. *Shoves*, 37 Ark. 389;

*County* v. *Bigham,* 10 Iowa, 39; *People* v. *Taylor,* 57 Cal. 620; *Pague* v. *San Francisco,* 3 Cal. 122; Opinion of Field, J., in case of *People* v. *Whitman,* 10 Cal. 46, and *People* v. *Reid,* 6 Cal. 288.

Finally, if it be conceded that petitioner is an officer de facto still, it is essential to his claim for a salary that he be an officer de jure. He must show that he is a qualified officer: *Jump* v. *Spence,* 28 Md. 1; *Thomas* v. *Owens,* 4 Md. 48; *State* v. *Cocke,* 54 Texas, 482; *Creighton* v. *Commonwealth,* 83 Ky. 143 (4 Am. St. Rep. 103); *Rounds* v. *Bangor,* 46 Me. 541 (74 Am. Dec. 469); *County* v. *Bingham,* 10 Iowa, 39, and cases before cited; Mechem on Public Officers, § 331. Defendant contends that plaintiff is not entitled to salary or compensation, because he has not furnished the required proof of his eligibility to the office by filing the statutory oath; and because he has not furnished the state the security (bond) required by law. He presents no proof of his election; presents no commission of appointment or election; presents no oath or bond of office.

For respondent there was a brief by *Messrs. Julius C. Moreland,* and *Dolph, Mallory and Simon,* with oral arguments by *Messrs. Moreland* and *Rufus Mallory.*

Opinion by Mr. Chief Justice Bean.

It will be observed that this is not a contest between the plaintiff, claiming to hold over after the expiration of his original term, and an appointee of the governor made on the assumption that a vacancy existed in the office. Nor does the case involve the existence of the office itself, but the real question here is, whether the plaintiff shall hold the office and receive its emoluments by virtue of his election in eighteen hundred and ninety-three, or whether it is vacant,

and must be filled by an appointment by the governor? We proceed to state briefly our views of the objections made by the secretary of state to the payment of plaintiff's salary.

1.  In view of the former decisions of this court, and the practical exposition of the constitution from almost the organization of the state to the present time, it is in our opinion now too late to question the right of the legislature to appoint the class of public officers to which the plaintiff belongs. It is admitted that there is no direct inhibition in the constitution against the exercise of such a power by the legislature, and it has been the long continued practice of that body to create a certain class of public offices, and to appoint the incumbents thereof. The state librarian, fish and pilot commissioners, food commissioner, game and fish warden, boatman at Astoria, and the railroad commissioners have always been elected by the legislature in joint convention, and the right to do so has never been questioned except in the case of *Biggs* v. *McBride,* hereafter referred to. We have thus for a series of years concurrent legislative exposition of the constitution to which the court ought to yield unless satisfied that it is repugnant to its plain words. Of course the plain provisions of the constitution cannot be broken down by practical exposition, but when, as here, such a practice is in violation of none of its express provisions, such an exposition is a very persuasive argument, and often of controlling force. In speaking of the effect of practical exposition, it was said by an able court that "It has always been regarded by the courts as equivalent to a positive law": *Bruce* v. *Schuyler,* 4 Gilman, 267 (46 Am. Dec. 417). And in *Rogers* v. *Goodwin,* 2 Mass. 477, in giving

a reason for adhering to long continued exposition, it is said: "We cannot shake a principle which in practice has so long and extensively prevailed." Indeed, harmony prevails throughout the whole scope of judicial opinion on this question: *Cline* v. *Greenwood,* 10 Or. 230; *Hovey* v. *State,* 119 Ind. 386 (21 N. E. 890), and authorities there cited. Independently, then, of judicial authority, we should hesitate to declare the act in question unconstitutional because of the practical exposition given to the constitution by the legislature, and acquiesced in by the other departments of government and the people. But we are without authority on the question.

2. In *Biggs* v. *McBride,* 17 Or. 640, (5 L. R. A. 115, 21 Pac. 878,) the right of the legislature to appoint railroad commissioners under the act now before us was called in question, and, while the case might have been decided on another point, it nevertheless received much consideration at the argument, and was one of the principal questions discussed by the court in its opinion, and the conclusion reached presumably met with the approval of the then members of the court. In that case it was contended, as here, that the right to appoint to public office belongs exclusively to the executive, and that the assumption of the legislature to fill the office of railroad commissioner by persons of their own selection is a usurpation by that department of government of powers that are vested by the constitution in the executive. Answering this argument Mr. Justice STRAHAN said: "It was not claimed at the argument that there is any express provision of the constitution which authorizes the governor in direct terms to make the appointment in question, but that it is included in the grant contained in article V,

section 1 of the constitution. That section declares: 'The chief executive power of the state shall be vested in a governor.' Now, if it could be shown that the power to appoint all officers which are not expressly made elective by the people is a part of 'the chief executive power of the state,' the appellant's contention would be sustained. But no authority whatever has been cited to sustain this view, nor is it believed that any exists. On the contrary, the provisions of the fifth article of the constitution, which relates to the executive department, all seem at variance with this view. The framers of this instrument evidently designed that no prerogative powers should be left lurking in any of its provisions. No doubt they remembered something of the history of the conflicts with prerogatives in that country from which we inherited the common law. They therefore defined the powers of the chief executive of the state so clearly and distinctly that there ought to be no controversy concerning the method of filling, or, in some cases, of changing the method of filling, an existing office." And, after referring to the several offices which have been uniformly filled by appointment by the legislature, the learned judge continued: "The power exercised by the legislature in the appointment of some of these officers is almost coeval with the constitution. The power thus exercised has never been called in question, but has ever been acquiesced in by every department of the government, and is in itself a contemporaneous construction of the constitution, which, if the question were doubtful, might be sufficient to turn the scale in its favor. Under any view, such construction is entitled to great weight, and could not be lightly regarded." And in *State* v. *George,* 22 Or. 152, (29 Am. St. Rep. 586, 29 Pac.

356, 16 L. R. A. 737,) which involved the right of the legislature to appoint or provide for the appointment of the bridge commissioners of the City of Portland, by some other authority than the executive, Mr. Justice LORD said: "Except as limited by constitutional restrictions, it is agreed that the legislature may exercise all governmental powers. It is the law making power of the state. While our constitution separates the powers of government into three distinct departments, and prohibits any of them from exercising any powers confided to the other, it does not undertake to declare what shall be considered legislative, executive, or judicial acts." And he quotes from WALKER, J., in *People* v. *Morgan,* 90 Ill. 558, that such "provision declares only in general terms, that each department of the government shall be confined to the exercise of the functions of its own department. It does not undertake to define, in any specific manner, what are legislative, executive, or judicial powers or acts. Like most other provisions of that instrument, the terms employed are of the most general and comprehensive character. * * * The executive power in a state is understood to be that power, wherever lodged, which compels the laws to be enforced and obeyed. And the instrumentalities employed for that purpose are officers, elected or appointed, who are charged with the enforcement of the laws. But the power to appoint is by no means an executive function, unless made so by organic law or legislative enactment. And in this case it is not so unless the power is thus conferred." In view of these judicial expressions by our predecessors, and the long continued practical exposition of the constitution to which we have already referred, we feel constrained to hold the act in question constitutional, although, if

the question was one of first impression, the court, as at present organized, might probably hold otherwise.

3.   It is next contended that the failure of the legislature of eighteen hundred and ninety-five to elect plaintiff's successor operated to create a vacancy in the office, and that plaintiff was not entitled to hold over; but it seems to us this question is settled by the express declaration of the constitution of this state and of the law under which he was elected. Section 1 of article XV of the constitution provides that "All officers, except members of the legislative assembly, shall hold their office until their successors are elected and qualified," and the act creating the board of railroad commissioners provides that such officers "shall hold their offices for and during the term of two years and until their successors are elected and qualified as in this act provided." It is thus declared, both in the constitution and the act itself, that the incumbent of the office shall hold until his successor is elected and qualified.   The legislature having failed to elect plaintiff's successor, it necessarily follows, if we are to give force and effect to the plain and express provisions of the constitution and the law, that he is entitled to hold the office and to receive its emoluments until such time as his successor shall be duly elected.   And to this effect are the authorities under similar provisions of law.   *State* v. *Simon,* 20 Or. 365 (26 Pac. 170); *Gosman* v. *State,* 106 Ind. 203 (6 N. E. 319); *State* v. *Harrison,* 113 Ind. 435 (3 Am. St. Rep. 663, 16 N. E. 384); *State* v. *Howe,* 25 Ohio St. 588 (18 Am. Rep. 321); *People* v. *Tilton,* 37 Cal. 614; *Badger* v. *United States,* 93 U. S. 599.

4.   It is next claimed that the sureties on plaintiff's official bond would not be liable for any breach

thereof occuring after the expiration of the two years' term provided by law, and that, therefore, his failure to renew the bond after the expiration of such term of itself worked a forfeiture of the office. There is a line of authorities holding that where one is elected to an office under a law which provides that he shall hold the office for a fixed term, and until his successor is elected and qualified, and he is either reelected at the expiration of the term, but fails to give a new bond, or a successor is regularly elected, but fails to qualify, and he is permitted to hold over, that the sureties on his bond are not liable for a defalcation occurring after the expiration of the fixed term. But these authorities seem to proceed generally upon the theory that his holding over is wrongful, because his own reëlection or that of his successor, and a failure to qualify, terminated his right to the office, and created a vacancy which should have been filled by the proper appointing power: *County of Scott* v. *Ring*, 29 Minn. 398 (13 N. W. 181). But whatever may be the true rule in the character of cases above suggested, "The weight of American authority sustains the proposition," says Mr. Throop, "that where an officer holds over rightfully, that is, pursuant to a statute providing that he shall hold over until his successor shall be chosen, or shall be chosen and shall qualify; this constitutes one of the exceptions to the rule that the liability of the sureties in an official bond does not extend beyond the principal's term, and that the sureties are liable for his defaults during the additional time": Throop on Public Officers, § 213. The author cites, in support of this position, *Akers* v. *State*, 8 Ind. 484; *Thompson* v. *State*, 37 Miss. 518; *State* v. *Wells*, 8 Nev. 105; *United States* v. *Jameson*, 3 McCrary, 620;

28 OR.—40.

*Mayor* v. *Horn,* 2 Harr. (Del.), 1(0; to which may be added *State* v. *Kurtzborn,* 78 Mo. 98; *State* v. *Daniel,* 6 Jones, (N. C.), 444. It would seem from this rule that, since plaintiff is rightfully holding over by virtue of the express provisions of the law creating the office, and his successor has never been chosen, the sureties on his official bond continue liable, and no new bond is necessary. But, however this may be, it seems to us clear that the mere failure by plaintiff to renew his bond, if it was necessary, did not of itself work a forfeiture of the office, but, under any view, could be nothing more than a ground of forfeiture in a proper proceeding for that purpose. As no such proceeding has been taken, and as there is no law of which we are aware authorizing the secretary of state to declare a public office forfeited, it follows from either view of the question that plaintiff is entitled to the office and its emoluments, notwithstanding the fact that he has failed to renew his official oath or bond.

5.. And, finally, it is claimed that so much of the act creating the board of railroad commissioners as provides for the election of such officers by the legislative assembly was repealed by implication by the act of eighteen hundred and ninety-one, known as the "Australian Ballot Law," the first section of which declares "that a general election shall be held in the several election precincts in this state on the first Monday in June, eighteen hundred and ninety-two, and biennially thereafter, at which there shall be chosen so many of the following officers as are to be elected in such year," (naming several state officers, the railroad commissioners, however, not being among the number,) "and all other state, district, county, or pre-

cinct officers provided by law." The contention for defendant is that the office of railroad commissioner having been created prior to the passage of this act, the latter clause of the section quoted repealed by implication the then existing provisions authorizing the legislature to elect such commissioners. But a sufficient answer to this contention is that the section of the Australian Ballot Law relied upon by the defendant is not a new legislative declaration, but is merely a reënactment of the provisions of the law as it existed long prior to the creation of the board of railroad commissioners, and therefore does not repeal by implication any provision of that act, even if it is in conflict therewith: Endlich on Interpretation of Statutes, § 195. We conclude, therefore, after a careful examination of this case and all the questions involved in it, that the judgment of the court below was right, and must be affirmed.

AFFIRMED.

Decided September 12, 1895.

ON REHEARING.
[41 Pac. 655.]

Opinion by MR. CHIEF JUSTICE BEAN.

In his petition for a rehearing counsel for the defendant calls attention to the fact that he did not base his contention as to the effect of the act of eighteen hundred and ninety-one entirely upon the first section, but contended at the hearing that sections 9 and 72, as well as section 1, and, in fact, the whole act indicated an intention to cover the entire subject of elections, and, in effect, to provide for the election of all state officers by the people, and is

therefore inconsistent with, and repeals by implication, that portion of the act creating a board of railroad commissioners which provides for the election of its members by the legislature. Repeals by implication are not favored, and it is only when the provisions of the latter act are so repugnant to the former that both cannot stand, or when the latter is clearly intended as a substitute for the former, that such an interpretion is to prevail: Endlich on Interpretation of Statutes, § 210. Now, it cannot be claimed that the act of eighteen hundred and and ninety-one was intended as a substitute for the act creating the railroad commission; nor, in our opinion, is there any conflict between the two acts. The office of railroad commissioner is nowhere mentioned in the act of eighteen hundred and ninety-one, nor does it provide that such officers shall be elected by the people. It begins by declaring that a general election shall be held on the first Monday in June, eighteen hundred and ninety-two, and biennially thereafter, at which time there shall be chosen so many of the following officers "as are to be elected in such year (naming certain officers; the railroad commissioners, however, not being among the number), and all other state, district, county, and precinct officers provided by law." It is thus, by its terms, confined to such officers as are by law to be elected by the people; and, as there is no law providing that the railroad commissioners shall be so elected, it manifestly has no application to them. The act of eighteen hundred and ninety-one was intended, as its title plainly implies, to fix the time for and regulate the manner of conducting state, district, county, and precinct elections; to prescribe the manner of making nominations; the printing and delivery of ballots; and to prevent frauds and punish crimes

affecting the right of suffrage. And the section declaring what officers shall be elected in the manner prescribed by the act is only a reënactment of the law as it stood prior to the creation of the board of railroad commissioners. In our opinion, there is nothing, therefore, in the point that the act of eighteen hundred and ninety-one repeals, or is inconsistent with, the law providing for the election of railroad commissioners by the legislature. Counsel also ably and learnedly reargues the question of the constitutionality of the act providing for the election of railroad commissioners by the legislature, but, inasmuch as the points raised were fully considered and determined in the former opinion, a rehearing would be unprofitable. The petition is therefore denied.

REHEARING DENIED.