Decided November 4, 1895.

## BAKER CITY v. MURPHY.
(35 L. R. A. 88; 42 Pac. 133.)

LIABILITY ON AN OFFICIAL BOND—ANNUAL OFFICE.—The principles and rules of law applicable to the responsibilities of sureties on public official bonds are the same, whether the term of the officer is annual or otherwise.

TENURE OF OFFICE BY PUBLIC OFFICIALS.—Under a constitutional provision that a public officer shall hold his office for a given period, and until his successor is elected and qualified, the term of such a person does not expire until he leaves the office—he continues in office by virtue of the previous election and qualification, and his term is co-extensive with his holding. The same rule applies to persons holding other public official positions under laws containing similar provisions: *State ex rel.* v. *Simon,* 20 Or. 365; and *Eddy* v. *Kincaid,* 28 Or. 537, cited and applied.

LIABILITY FOR DEFALCATION OF PUBLIC OFFICIAL WHO IS HOLDING OVER.*—The sureties on the official bond of a city treasurer,

*This case is reprinted in 35 L. R. A. 88, with a valuable note on the Extension of Liability on Official Bonds while the officer is holding over after the expiration of the regular term, showing those cases where the officer is merely holding beyond the term, and those where the bond or some statute provides for a continuance of liability until a successor is appointed. There is also in this note a collection of a few cases on the liability of the sureties after the re-election of the principal. See also 10 Am. St. Rep. 843, for a scholarly monograph on the Liability of Sureties on Successive Bonds.—REPORTER.

elected for one year under a city charter providing that he shall hold office until his successor is elected and qualified, are liable for defalcation of their principal after the expiration of the year, while holding over, pending the election or appointment of his successor.

PLEADING—DEFECTS CURED BY ANSWER.—In an action to recover the amount of a defalcation that occurred after the expiration of the regular term for which the official .was elected, and while he was holding over, it perhaps ought to be alleged that the defaulter was not elected his own successor; but where the defendant answered without raising this point, the complaint will be held sufficient where it alleged that the defaulter's term expired on a certain day, but that he contested the election held on that day, and refused to surrender the office for a certain time during which he was a de facto officer: *Willer* v. *Or. Ry. & Nav. Co.,* 15 Or. 158, cited and applied.

From Baker: JAMES A. FEE, Judge.

Appeal by defendants from a judgment of the Circuit Court for Baker County in favor of plaintiff in an action brought to enforce defendant's liability on bond of the city treasurer, for money alleged to have been misappropriated by him.

AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Thos. H. Crawford,* urging these points:

It is not disputed the office of city treasurer of Baker City was an annual office, and that it was the duty of the treasurer to receive and keep all money that came to the city, and pay out the same upon warrants duly attested. From this it is clear that whatever money he has on hand at the end of one term he has at the beginning of the next term, and the bondsmen on the second term are liable therefor. Such money both in fact and in contemplation of law came into his possession during the term subsequent to that for which Parker and Rust became Murphy's sureties (i. e., subsequent to November 6, 1893, when his term of office expired), and for the loss of funds after that date they are not liable. In this case the loss occurred between

November 6 and his resignation on December 19: *Tyler* v. *Nelson,* 14 Gratt. 214; *Bryan* v. *United States,* 1 Black 140; *Hewitt* v. *State,* 14 Am. Dec. 259.

Where moneys which have been collected during the first term of an office remain in the custody of the officer when he enters upon the discharge of his duties for the second term, the sureties for the latter term immediately become answerable therefor, and those for the former term are relieved from further liability: *Board of Education* v. *Fonda,* 77 N. Y. 350; *State* v. *Van Pelt,* 1 Ind. 304; *Morley* v. *Town of Metamora,* 78 Ill. 394 (20 Am. Rep. 360); *Moore* v. *Madison Co.,* 38 Ala. 670.

When sureties are held answerable for moneys converted by the principal during a subsequent term of office, it is always upon the ground that as to such moneys he is simply continuing to discharge the duties of the former term: *Crawn* v. *Commonwealth,* 10 Am. St. Rep. 845, and note.

The sureties on the official bond of an officer appointed or elected annually are liable only for his official acts during the year, and although the words of condition in the bond are general, yet the liability of the sureties on the bond cannot be extended beyond the year: 2 Am. & Eng. Enc. Law (1st Ed.), 466; *Moss* v. *State,* 10 Mo. 338 (47 Am. Dec. 116); *Chelmsford Co.* v. *Demarest,* 7 Gray, 1; *Bigelow* v. *Bridge,* 8 Mass. 275; *Welch* v. *Seymour,* 28 Conn. 387; *County of Wappello* v. *Bingham,* 10 Iowa, 40 (74 Am. Dec. 370); *Dover* v. *Twombly,* 42 N. H. 59; *State Treasurer* v. *Mann,* 34 Vt. 371; *Mayor* v. *Crowell,* 40 N. J. L. 207 (29 Am. Rep. 224); *Citizens' Loan Assn.* v. *Nugent,* 40 N. J. L. 215; *Mayor* v. *Horn,* 2 Harr. (Del.) 190; *Johnson* v. *McCord,* 10 Am. Dec. 644; *Committee* v. *Greenwood,* 1 Desau. 450; *Kingston Insurance Co.* v. *Clark,* 33 Barb. 196; *Patterson* v. *Inhabitants of Freehold,* 38 N. J. L. 255; *Harris* v.

*Babbitt,* 4 Myers, Fed. Dec. 588; *Mutual Loan Assn.* v. *Price,* 26 Am. Rep. 703.

For respondent there was a brief and an oral argument by *Messrs. Frank L. Moore* and *Will R. King.*

Opinion by MR. JUSTICE WOLVERTON.

This is an action to recover upon the official bond of the defendant S. F. Murphy as treasurer of Baker City. The defendants J. H. Parker and Henry Rust are his sureties upon the bond. Murphy was duly elected treasurer at the regular annual election of the city November 7, 1892; and, having filed his oath of office, he executed and filed the bond in question on the 25th day of April, 1893, the condition of which is that the said S. F. Murphy "shall honestly and faithfully discharge his duties as treasurer of Baker City during his continuance in such office." This bond was executed and delivered in pursuance of an ordinance of the city adopted January 7, 1891, requiring the treasurer to execute an official undertaking to plaintiff. The complaint alleges, among other things: "That on the 25th day of April, 1893, said S. F. Murphy duly entered upon the duties of his said office, and continued to act by virtue of said election until the 19th day of December, 1893; that the term of office of the said S. F. Murphy expired on the 6th day of November, 1893, but that said Murphy contested the election held on said date, and retained possession of all the property of said office, and refused to deliver the same, and was the de facto treasurer of said city until the 19th day of December, 1893, when the said Murphy resigned all his right, title, and interest to said office. * * * That on and between the 30th day of April, 1893, and the 7th day of November, 1893, the said S. F. Murphy received various sums of money as such

treasurer, amounting to the sum of $16,219.14, said moneys being the property of plaintiff; that said Murphy failed, neglected, and refused to honestly and faithfully discharge the duties as such treasurer, and violated the terms of his said bond in this, that said S. F. Murphy fraudulently and in breach of the terms of his said bond failed and neglected to turn over to the plaintiff or to his successor in office the said sum of $16,219.14, or any part thereof, except the sum of $11,050.82, and has converted and appropriated to his own use the said sum of $4,119.59."

The defendants, by their answer, among other things, "deny that said S. F. Murphy continued to act by virtue of his said election until the 19th day of December, 1893, or at any time after the 6th day of November, 1893, at which time his said term of office expired, and he succeeded himself as the alleged de facto treasurer of said Baker City; admit that the term of office of the said S. F. Murphy expired on the 6th day of November, 1893, but deny any knowledge or information as to whether Murphy contested the election held on said date; admit that the said Murphy retained possession of all the property of said office, and refused to deliver the same, and aver his retention of said property and his refusal to deliver the same was based upon a valid claim that he was at said time (November 6, 1893) elected his own successor in said office"; and "admit that the said S. F. Murphy was the de facto treasurer of said city, at least, if not the duly elected treasurer, on and between the 7th day of November, 1893, and the 19th day of December, 1893; and defendants aver the fact to be that said plaintiff, Baker City, its mayor, and common council, acknowledged said Murphy and held him out to the world and these defendants as its duly elected, qualified, and acting treasurer on and between said dates, and as his own successor of, in, and

to said office." The affirmative allegations of the answer were put in issue by the reply.

This recital of the pleadings is sufficient for a fair understanding of the questions arising thereunder. The bill of exceptions does not disclose whether any evidence was offered to show that Murphy was re-elected as city treasurer November 6, 1893, or that the city or its authorities ever subsequently treated or dealt with him as having entered upon a second term; it does disclose evidence, however, tending to show that on November 4, 1893, he filed his official report, which was referred back to him by the city council for the purpose of having it made more definite and certain, and was afterwards, in December, 1893, handed to the finance committee, who were charged with the duty of procuring a settlement with him in behalf of the city. In the performance of this duty the committee made demand upon Murphy about December 23, 1893, for the funds then in his hands, and received from him the sum of $1,025 in money and $20 in warrants. The balance he refused to pay. Subsequently his successor, J. W. Wisdom, who was appointed treasurer December 19, 1893, made a like demand upon him in January, 1894, but payment was refused. The evidence further tends to show that, prior to November 6, 1893, Murphy received most, if not all, the funds alleged to have been misappropriated, and there is some evidence tending to show that he had the larger portion of it on hand at that date, and subsequent thereto, and some of it as late as December 16, 1893. A trial being had before a jury resulted in a verdict and judgment in favor of plaintiff for the amount demanded.

This record, together with the instructions of the court to the jury, present the question whether the sureties upon the official bond of a public officer elected for a term of one year, under a city charter providing that he

"shall hold his office until his successor is elected and qualified," can be held for defalcations of the principal occurring subsequent to the end of the year, while holding over pending the election or appointment of his successor. It is contended, first, that this is an annual office, and that the sureties upon the bond of an officer elected to fill such an office are liable only for his official acts during the year, although under statutory provisions he is entitled to hold over until his successor is elected and qualified. It may be said of any office having a fixed term of one year, and which, in contemplation of law, is to be filled by appointment or election annually, that it is an annual office: *Harris* v. *Babbitt,* 4 Dill. 190; *Sparks* v. *Farmers' Bank,* 3 Del. Ch. 289. But it is not apparent why an annual office, public in its nature, is not governed by the same principles and the same rules of law, touching the obligations and liabilities or sureties upon the bonds of incumbents, as any other public office. We have found in the books no reason or authority for any distinction, and we believe none exists. The laws and ordinances governing the length of the term, the expiration thereof, the commencement of a succeeding term, and the duties and responsibilities of incumbents, are construed by the same rules of interpretation, whether they apply to an annual office, public in its nature, or any other public office having a longer term, so that the responsibilities of sureties upon the bond of an officer filling an annual office are the same as if they stood sponsor by written obligation for the faithful performance of the duties of any other public officer.

It is a well-settled rule of law, recognized generally, if not by all the authorities, that bonds or obligations given to secure the performance of official duties are to be construed with reference to the term for which the incumbent is elected or appointed; and it is equally well settled that

the law governing as to the term, its time of commencement and expiration, and the conditions and contingencies upon which it shall begin, continue, and come to an end, enters into and forms a part of such bonds or obligations, where general language is used in stipulating the conditions. Sureties upon such undertakings are presumed to have known the duration of the term when they became parties to them, and to have intended to bind themselves to the extent and for and during the time that their principals are bound. It is only upon the application of the rule to statutory enactments governing the tenure of office that the authorities appear to part company: *Welch* v. *Seymour*, 28 Conn. 393; *Kitson* v. *Julian*, 24 Law Jour. (Q. B.) 204; *County of Wapello* v. *Bigham*, 10 Iowa, 42 (74 Am. Dec. 370); *State Treasurer* v. *Mann*, 34 Vt. 371 (80 Am. Dec. 688); *Liverpool Water Works Co.* v. *Atkinson,* 6 East. 511; *Wardens of St. Saviour's* v. *Bostock*, 5 Bos. & Pul. 179; *Lord Arlington* v. *Merricke,* 2 Wms. Saund. 412; *Hassell* v. *Long*, 2 Maule. & S. 368; *Savings Bank of Hannibal* v. *Hunt*, 72 Mo. 597 (34 Am. Rep. 449); *Thompson* v. *State*, 37 Miss. 522; *State ex rel.* v. *Berg*, 50 Ind. 496; *Sparks* v. *Farmers' Bank*, 3 Del. Ch. 300; *Riddel* v. *School District*, 15 Kan. 168; *Mayor of Rahway* v. *Crowell*, 40 N. J. Law, 207 (29 Am. Rep. 234); *State* v. *Crooks*, 7 Ohio (Pt. 2), 221; *County of Scott* v. *Ring*, 29 Minn. 401 (13 N. W. 181). Considered in the light of this rule of interpretation, did S. F. Murphy's term of office as city treasurer came to an end November 6, 1893? If it did, if it expired absolutely upon that date, then his acts thereafter were functus officio, in so far, at least, as they could have any binding force and effect touching the liabilities of the sureties upon his official bond.

In the State constitution (Art. XV, § 1), it is provided that "All officers—except members of the legislative assembly—shall hold their offices until their successors are

elected and qualified." Under this section and the provisions of an act regulating the election of railroad commissioners wherein the term of office was fixed at two years, "and until their successors are elected and qualified," it has been recently held by this court *(Eddy* v. *Kincaid,* 28 Or. 537, 41 Pac. 156), that such commissioners were entitled both to the office and the emoluments thereof while holding over after the expiration of the two years' term, the legislature having failed to elect their successors. And in *State ex rel.* v. *Simon,* 20 Or. 365 (26 Pac. 170), BEAN, J., says: "But, whatever the rule at common law may have been, it is clear that when by the constitution or law officers are elected or appointed for a term, and until their successors are elected and qualified, they are thereby authorized to hold and exercise their offices until their successors are duly elected or appointed under some existing provision of law." So that the law may be considered as settled that state officers holding over under the constitution or under an act of the legislature entitling them to hold "until their successors are elected and qualified," unless otherwise restricted, are entitled both to the office and the emoluments appurtenant thereto. The charter of Baker City was accorded to it by the legislature. By its provisions (section 9), it is enacted that "The treasurer shall be elected for one year by the qualified voters of Baker City at each general election as hereinafter provided, and shall hold his office until his successor is elected and qualified." While this is not a state office, the legislature has provided that the treasurer shall hold until his successor is elected and qualified, which it had the undoubted right and authority to do; and, by a parity of reasoning, the tenure of office must be governed by this express provision.

Can it be said, then, that the treasurer's term of office had come to an end on the 6th day of November, 1893?

And in what respect can it be said that his subsequent acts are functus officio while holding over pending the election and qualification of a successor? In *State ex rel. v. Berg,* 50 Ind. 501, the court say: "Under the constitution, as well as under the law fixing the term of Berg's office, it is clear that he was entitled to hold the office, not only for the year, but until his successor was elected and qualified. As long as he continued in the office, his successor not having been elected and qualified, he was such officer, not de facto merely, but de jure. The constitution and law. under which he was elected, enacted in pursuance of the constitution, made him such." The conclusion reached here is based, it is true, upon the constitutional as well as the statutory provision on the subject, but it is a direct adjudication as to the tenure of the office. *State ex rel. v. Smith,* 87 Mo. 158, is a case much in point, with the constitutional element eliminated, and arose under the provisions of the charter of the City of St. Louis. BLACK, J., in delivering the opinion of the court says: "It is true, the law by which the relator was appointed fixed the term of office at four years, and contemplates that at the expiration of that time a new appointment will be made, but the same law also contemplates that the appointing power may not be promptly exercised, and to prevent a vacancy the incumbent is made to hold over until such appointment is made. This is a contingency contemplated by the law, and enters into every such appointment, and the time he holds over the designated period is as much a part of the term of his office as that which precedes the date at which the new appointment should be made. We have seen this is so for all purposes of holding the office, and in suits against the officer and his sureties on his official bond, and it must also be true with respect to the emoluments of the office." See also *Savings Bank of Han-*

*nibal* v. *Hunt,* 72 Mo. 597 (37 Am. Rep. 449); *Long* v. *Seay,* 72 Mo. 648; and *State* v. *Kurtzeborn,* 78 Mo. 99.

In *State* v. *Sullivan,* 45 Minn. 309 (11 L. R. A. 272, 22 Am. St. Rep. 729, 47 N. W. 802), it is held, that "the incumbent of an office, the term of which is for a specified period, 'and until his successor is elected and qualified,' is entitled to retain the office after the lapse of the specified period, in the event of the election of another person to succeed him who is ineligible." See also, in support of this doctrine, *State* v. *Benedict,* 15 Minn. 198; and *People* v. *Tilton,* 37 Cal. 614. And if no vacancy occurs the incumbent's term must be continuous. In *State* v. *Howe,* 25 Ohio St. 597 (18 Am. Rep. 321), it is held that an incumbent so holding over after the technical term is in office de jure; but it was there thought that the time intervening between the expiration of the period fixed by the statute and the election and qualification of a successor was not a part of the preceding term, and that the holding over was pro tempore. In other cases it is held that the holding over is but an occupancy of that proportion of the successor's term. See *Riddel* v. *School District,* 15 Kan. 170. One thing, however, is palpably manifest, that the right to hold over is by virtue of the previous appointment or election and qualification; it is a right accorded by statutes regulating the tenure of office. The holding does not come to an end on the day of the expiration of the statutory period, unless there comes a duly elected and qualified officer to cut it off, or unless his recognized successor is inducted into the office. In one sense, the holding over is pro tempore, because the time of the holding is dependent upon the election or appointment of a successor; and in another it may be considered as the occupancy of a successor's term, which is shortened by that length of time. But the holding for the technical term and the holding over is a recognized right arising from one

appointment or one election. The tenure of office is indivisible. It cannot be considered as a broken term, or as a double term; it is one continuous holding; and the holding over, abiding the election of a successor, it seems to us, is as much a part of the term of office as that which precedes it, and the interpretation of the bond in question must be governed accordingly. The city charter provides (section 24), that "Every person elected to office under this act shall qualify by taking and filing with the auditor within ten days from his election, an oath of office"; and it is contended for this provision that a failure or refusal to thus qualify within ten days has the effect to vacate the office. However this may be, the clause in question has reference to the officer-elect, and not to an incumbent who has already qualified, and is holding over the particular term. There is no provision in the charter requiring an officer holding over pending the election of his successor, to requalify; if there is, our attention has not been called to it. He continues in office by virtue of his previous election and qualification, and the term is co-extensive with his holding in that capacity. In coming to this conclusion, we have not been unmindful of the rule that the contracts of sureties are to receive a strict construction, and that they ought not to be bound except by the letter of their undertaking. As bearing upon the foregoing conclusions, we cite also: *Badger* v. *United States*, 93 U. S. 599; *State ex rel.* v. *Saxon*, 25 Fla. 792 (6 So. 858); *Placer Co.* v. *Dickerson*, 45 Cal. 12; *Mayor of Cuthbert* v. *Brooks*, 49 Ga. 179; *Kimberlin* v. *State*, 133 Ind. 696 (14 L. R. A. 858, 29 N. E. 776); *People* v. *Beach*, 77 Ill. 52.

Nor is *King County* v. *Ferry*, 5 Wash. 536 (19 L. R. A. 500, 34 Am. St. Rep. 880, 33 Pac. 538), opposed to this view. There the legislature enlarged or extended the term after the execution of the bond. This was held, and correctly, too, to be an impairment of the sureties' con-

tract; for at the time of assuming the obligation they could not have had in mind the extended period which the legislature afterwards saw fit to add to the term fixed by law, and did not engage to become responsible for the acts of their principal during the added period. Mr. Throop, in his work on Public Officers (§ 213), says: "But, whatever may be the true rule, in the case of a wrongful holding over, the weight of American authority sustains the proposition, that where an officer holds over right-fully, that is, pursuant to a statute providing that he shall hold over until his successor shall be chosen, or shall be chosen and qualified, this constitutes one of the excep-tions to the rule that the liability of the sureties in an official bond does not extend beyond the principal's term, and that the sureties are liable for his defaults during the additional time." See also in this connection *Thompson* v. *State*, 37 Miss. 522; and *State* v. *Wells*, 8 Nev. 105. And this view has been adopted in *Eddy* v. *Kincaid*, 28 Or. 537 (41 Pac. 156). But whether considered as an exception or as the rule itself, it can only be sustained upon the principle that the holding over is a continuation of the term, and, together with the technical term, constitutes one and the same term.

Many authorities are cited by counsel for appellant, of which *Chelmsford Company* v. *Demarest*, 7 Gray, 1, is the leading case, in support of the contention that the sure-ties are not held beyond the particular term. But it will be found, upon an examination of these authorities, that they nearly all consist of cases where the incumbents have been re-elected or re-appointed to the same office, and the authorities have permitted them to continue in office without again qualifying. In such a case it is the duty of the authorities to require the incumbent to requalify, and upon his failure or refusal to comply with the require-ment to declare the office vacant, failing in which the

sureties are not bound beyond the term, or, as some of the authorities say, a reasonable time thereafter. See in this connection *Rany* v. *Governor*, 4 Blackf. 5. The case is the same as if one officer succeeds another by election or appointment and is inducted into the office without qualifying. The former term lapses and the new one begins with an incumbent without sureties for the due and faithful observance of his duties. These authorities are without relevancy here. The instruction of the court to the jury touching the liability of the sureties was, in effect, that they were liable upon the bond for the acts of the principal from the time of the execution thereof to the 6th day of November, 1893, and for a reasonable length of time thereafter. This instruction was fully as favorable to the defendants as they had a right to expect under the law.

Objections were made by defendants at the trial to the introduction of all the testimony, as it was offered, upon the ground that the complaint does not state facts sufficient to constitute a cause of action, and it is contended that the complaint is faulty in that it contains no direct allegation that the defendant was not elected his own successor. If tested by a demurrer, we are not sure but this would have been a vital objection: *Thompson* v. *State*, 37 Miss. 522. But the defendants have answered over, and the objection is taken for the first time at the trial. In such a case the pleadings will receive a liberal construction, to the end that the case may be permitted to go to the jury upon the merits. THAYER, J., in *Specht* v. *Allen*, 12 Or. 122 (6 Pac. 494), says, "that a party in such a case should be compelled to, resort to a motion for judgment notwithstanding the verdict, in case one were to be rendered against him, as the party interposing the pleading ought, when it had not been demurred to, to be entitled to the presumption a verdict in his favor would afford."

See also *Dickinson* v. *Duston*, 21 Mich. 563; and *Kean* v. *Mitchell*, 13 Mich. 211.   The complaint alleges "that on the 25th day of April, 1893, said S. F. Murphy duly entered upon the duties of his said office, and continued to act by virtue of said election until the 19th day of December, 1893.   That the term of office of the said S. F. Murphy expired on the 6th day of November, 1893, but that said Murphy contested the election held on said date, and retained possession of all the property of said office, and refused to deliver the same, and was the de facto treasurer of said city until the 19th day of December, 1893, when the said Murphy resigned all right  and title to said office." We think it may be inferentially deduced from these allegations that Murphy was not elected his own successor, and that the complaint is sufficient after verdict. STRAHAN, J., says:  "After verdict, if there are any allegations in the complaint under which evidence might have been introduced which would have justified the verdict, we are bound to presume that it was introduced, and that the verdict is based thereon": *Willer* v. *Oregon Ry. & Nav. Co.*, 15 Or. 158 (13 Pac. 768).   So that, upon the case made by the pleadings, and the presumption that prevails in support of the findings of a jury, we are not disposed to disturb the verdict, and, no error appearing upon the record, the judgment  of  the court below is affirmed.

AFFIRMED.