## BALLANTYNE v. BOWER, SHERIFF.

OFFICE AND OFFICERS—JUSTICES OF THE PEACE—TERM OF OFFICE—COMMENCEMENT—QUALIFICATION—CIVIL OFFICE UNDER THE STATE—STATUTORY CONSTRUCTION—VACANCY—DEATH BEFORE COMMENCEMENT OF TERM—INCUMBENT—HOLDING OVER.

1. Justices of the peace are included in the term "county officers" as used in the statute fixing the time for all county officers elected at a general election to qualify and enter upon their respective duties. (R. S. 1899, Sec. 1224.)

2. The commencement of the term of one elected justice of the peace at a general election is the first Monday in January next following such election.

3. The office of justice of the peace is a civil office under the state, within the meaning of the constitutional provision that every person holding any civil office under the state shall, unless removed according to law, exercise the duties of such office until his successor is duly qualified. (Art. 6, sub-division Elections, Sec. 4.)

4. The word "successor" in said constitutional provision means one legally chosen or selected.

5. Since the office of justice of the peace is required to be regularly filled by election at general elections, an appointment to the office by the board of county commissioners is authorized only in case of a vacancy.

6. The original act may be looked to as an aid in construing statutory provisions which are found in the Revision of 1899 in two sections, but, as originally enacted, were contained in a single section.

7. The giving of the bond required of a justice of the peace is one of the requirements of qualifying, and the statute is to be construed as requiring the giving of the bond in the amount and manner stated before entering upon the duties of the office.

8. As used in the statute specifying as one of the events which when happening to the incumbent, shall cause a vacancy in an elective office, his refusal or neglect to take the oath of office or give or renew his official bond, or deposit or file such oath or bond within the time prescribed by law, the term "incumbent" in relation to such event refers to one last elected to the office, and whose duty it is before entering upon its duties to take the oath and give a bond, and is to be construed as referring to a living person. (R. S. 1899, Sec. 381.)

9. A person cannot be considered the incumbent of an office after his death, and, therefore, where one elected to an office dies before the time fixed by law for him to qualify his failure to qualify does not cause a vacancy under the provisions of Section 381, Revised Statutes of 1899.

10. The time for a justice of the peace elected· at a general election to qualify is at or after the commencement of his term, which term does not commence until the first Monday in January next following such election.

11. Assuming that one elected to an office at a general election may take the required oath and execute his bond, and deposit the same with the proper officer prior to the date fixed for the commencement of his term, or the time fixed by law for qualifying, such acts will not become effective as qualifying acts until the time fixed by law for their performance.

12. The approval of the bond of one elected to the office of justice of the peace is necessary to complete his qualification.

13. At the general election in 1908, a person was elected to the office of justice of the peace and, upon receiving a certificate of election, took the oath of office, executed a bond, and filed and deposited the same with the county clerk, and died before the approval of the bond and before the first Monday in January next following the election, the time fixed by law for qualifying and as the commencement of his term.  *Held*, that his death did not create a vacancy in the office after the commencement of the term for which he had been elected, which could be filled by appointment, but that the one holding under a previous election was the lawful incumbent and entitled to hold over.

[Decided February 16, 1909.]                    (99 Pac. 869.)

HABEAS CORPUS.

Andrew Ballantyne, who was confined in the county jail of Albany County under a commitment issued by one F. E. Anderson, claiming to be a justice of the peace, applied for his discharge upon habeas corpus. The facts are stated in the opinion.

*S. C. Downey* and *V. J. Tidball,* for the plaintiff.

Dayton, who was elected a justice of the peace at the general election in 1908, and died November 23, 1908, did not qualify before his death for two reasons: (1) His bond which he had executed was not approved until after his death and after the commencement of the term for which he was elected; (2) His attempt to qualify by taking the oath and giving bond was void because the statute did not permit him to qualify until the first Monday in January following the election. (*In re.* Moore, 4 Wyo. 198.) To "qualify" means to take such steps as the statute requires before a person elected or appointed to an office is permitted to enter upon the discharge of its duties. In this case it means not only the taking and subscribing of the oath of office but the filing of a bond to be approved by the Board of County Commissioners. (State v. Albert, (Kan.) 40 Pac. 286; Holt County v. Scott, (Neb.) 73 N. W. 681; Rounds v. Bangor, 46 Me. 541; 29 Cyc. 1387.) The attempted qualification was premature and the attempt of the new Board of County Commissioners to approve the bond after Dayton's death was *ultra vires.* The statute requiring county officers to qualify on the first Monday in January next succeeding the general election or within 20 days thereafter is mandatory. (R. S. 1899, Secs. 1223, 1224; *In re.* Moore, *supra;* Cooley, Const. Lim., (5th Ed.) 92; State v. Lansing, 46 Neb. 514; Archer v. State, 74 Md. 443; Duffy v. Edson, (Neb.) 84 N. W. 264; People v. Perkins, (Cal.) 26 Pac. 245; State v. Conn, 14 Kan. 172; 29 Cyc. 1388.) The death of a person elected to an office before he has qualified does not create a vacancy. (People v. Whitman, 10 Cal. 38; Kimberlain v. State, 130 Ind. 120; Com. v. Hanley, 9 Pa. St. 513; State v. Dahl, 55 O. St. 195;

State v. Benedict, 15 Minn. 198; McCreary on Elections,
Sec. 349, (4th Ed.) ; 23 Ency. L. 416; State v. Jenkins,
43 Mo. 261.)   At the time of Dayton's death he was not
an incumbent of the office nor was he such incumbent at
the commencement of his term occurring after his death so
as to cause a vacancy in the office by reason of his failure
to qualify.  (People v. Whitman, 10 Cal. 38; Rosborough
v. Boardman, 7 Pac. 261; Ward v. People, 40 Pac. 538;
People v. Rogers, 50 Pac. 668; People v. Taylor, 57 Cal.
620; Adams v. Doyle, 73 Pac. 582; People v. Perkins, 85
Cal. 509; State v. Benedict, 15 Minn. 198.)

*F. E. Anderson, Sheridan Downey* and *N. E. Corthell,*
for the defendant.

A vacancy arose in the office in the term for which Dayton
had been elected at its commencement.   His death after
qualification, and either before or after the beginning of
the term would create such vacancy, and, therefore, an ap-
pointment would be authorized after the commencement of
the term.   (29 Cyc. 1401; People v. Ward, 107 Cal. 236;
State v. Bemenderfer, 96 Ind. 374;  State v. Albert, 40
Pac. 287;  State v. Seay, 64 Mo. 89.)   It has been held in
a number of cases that the death of an officer elect before
qualifying creates such a vacancy.   (Olmstead v. Augustus,
(Ky.) 65 S. W. 817;  State v. Hopkins, 10 O. St. 509.)
Whether this be the better rule or not under such cases
would appear to be material under our statute inasmuch
as the contingencies specified in Sub-Division 7 of Section
381, R. S. 1899, would inevitably arise, and the vacancy
would occur for (a) neglect to take the oath of office;  (b).
neglect to give the bond;  (c) neglect to file the oath;  (d)
neglect to file the bond.   The failure to qualify from what-
ever cause creates a vacancy in accordance with the statute,
and the incumbent for the preceding term cannot exclude a
new appointee from the office.   (Kline v. McKelvey, (W.
Va.) 49 S. E. 896; Chappell v. Board, (Cal.) 93 Pac.
1061.)   The term "incumbent" as used in the statute does
not apply to the outgoing officer after the expiration of his

term, but to the newly elected officer in whose term a vacancy has occurred. (Adams v. Doyle, 139 Cal. 678.) There is nothing in the contention that Dayton's qualification was invalid. Statutes prescribing the time for qualification of an officer are directory. (Suth. Stat. Const. 447; Howland v. Luce, 16 Johns. 135; Boykin v. State, 50 Miss. 375; Mechem Pub. Off. 262-266; Rasmussen v. Board, 8 Wyo. 277.) The officer has done his duty when he has executed and filed his bond and its approval, therefore, relates back to the time when it was deposited. The title of the officer is not dependent upon the action of the approving body. (McFarlane v. Howell, (Tex.) 43 S. W. 315; State v. Dahl; 65 Wis. 570; Duffey v. Edson, (Neb.) 84 N. W. 264; Green v. Wardwill, 17 Ill. 278; Holt Co. v. Scott, (Neb.) 73 N. W. 681.) This accords with the practical interpretation by the public, for officers elected have customarily qualified before as well as during the twenty day period. Such practical construction in case of doubt should be regarded as decisive. (Suth. Stat. Const. 309; Smyth v. Bryan, (Va.) 40 S. E. 652.) To qualify means no more than giving the bond and taking the oath. (State v. Meidling, 6 O. St. 44.)

POTTER, CHIEF JUSTICE.

On January 14, 1909, the plaintiff was committed to the county jail of Albany County by one F. E. Anderson, claiming to be a justice of the peace, and here seeks his discharge on the ground that said Anderson was not a justice of the peace, and had no authority to issue the warrant for plaintiff's arrest or the commitment under which he is imprisoned. The case has been submitted upon an agreed statement of facts by which it appears that at the general election held in November, 1906, one Hugh Hynds was duly elected justice of the peace in and for Laramie precinct in said Albany County, and entered upon the discharge of his duties on the first Monday in January, 1907. That at the general election in November, 1908, said Hugh Hynds and one Thomas J. Dayton, were opposing candi-

dates for said office, and that said Dayton was elected, and on November 21, 1908, was given a certificate of such election. That on November 21, 1908, said Dayton filed with the county clerk of said county his oath of office, and his bond in the sum of $1,500, and thereafter, on November 23, 1908, died. That on January 8, 1909, after the death of said Dayton, the board of county commissioners of said Albany County approved the said bond theretofore filed by him; and on January 9, 1909, appointed said F. E. Anderson to the office of justice of the peace for Laramie precinct. That on January 12, 1909, said Anderson took the oath of office and filed the bond required by law which was approved by said commissioners. That said Hynds has never turned over the books or papers of his office to Anderson, but the latter as well as the former has undertaken to transact the justice business in said precinct. It may be stated that but one justice of the peace is authorized by law in that precinct.

The jurisdiction to consider in this case the right of Anderson to occupy said office is not here questioned, and we suppose that his authority in the premises is a proper subject for consideration in determining the legality of plaintiff's imprisonment. Both parties who claim the office seem to be here represented by counsel, and the only question argued has been whether Anderson or Hynds is entitled to perform the duties of justice of the peace in the precinct aforesaid.

Justices of the peace hold their office by election in their several precincts, except when appointed to fill a vacancy, and are required to be elected at the general election held on the Tuesday next following the first Monday in November in each even numbered year. (R. S. 1899, Sec. 202.) The constitution provides that all state and county officers elected at a general election shall enter upon their respective duties on the first Monday in January next following the date of their election, or as soon thereafter as may be possible. (Art. 6, Sub-Division "Elections," Sec. 5.) And the stat-

ute provides that all county officers shall qualify and enter
upon the discharge of their respective duties upon the first
Monday in January immediately following such general
election. (R. S. 1899, Sec. 1224.) Although justices of
the peace are required to be elected in precincts estab-
lished by the board of county commissioners their juris-
diction extends throughout the county (Id., Sec. 4323),
and the salaries of those for whom a fixed salary is pro-
vided by law are paid by the county (Id., Sec. 1246), and
the fees collected by them are required to be paid into the
county treasury. (Id., Sec. 4319.) They are required to
take the oath required "of other county officers." (Id.,
Sec. 4317.) It seems reasonable, therefore, to regard them
for some purposes, at least, as county officers, and to con-
strue the term "county officers" in Section 1224, prescrib-
ing the date when they shall qualify and enter upon the dis-
charge of their respective duties as including justices of
the peace, there being no other provision of law relating
in that respect specifically to those officers. This we under-
stand to have been the uniform popular interpretation of the
statute, and it does not seem to be here controverted. The
commencement of the term of office of one elected justice
of the peace at a general election is, therefore, the first Mon-
day in January next following such election.

It is provided in the constitution (Art. 6, Sub-Div. "Elec-
tions," Sec. 4) that "Every person holding any civil office
under the state or any municipality therein shall, unless
removed according to law, exercise the duties of such office
until his successor is duly qualified." Within the meaning
of that provision the office of justice of the peace is clearly
a civil office under the state. (Atty. Gen'l v. Common
Council, 112 Mich. 145; Montgomery v. State, 107 Ala.
372; Shelby v. Alcorn, 36 Miss. 273; People v. Leonard,
73 Cal. 230; 14 Pac. 853; Barnhill v. Thompson, 122 N.
C. 493; State v. Scott, (Minn.) 117 N. W. 1044.) It is
an office provided for by the constitution and general laws
of the state, and is connected with the judicial department

of the state government. Justices of the peace are granted concurrent jurisdiction with the district court in all civil actions where the amount in controversy, exclusive of costs, does not exceed two hundred dollars, and to hear and determine cases of misdemeanor as may be provided by law. (Const. Art. 5, Sec. 22.) In Shelby v. Alcorn, *supra*, it was said that the words "civil office under the state" import an office in which is reposed some portion of the sovereign power of the state, and, of necessity, having some connection with the legislative, judicial or executive department of the government." And that "a member of the board of county police, or a justice of the peace, is as much an officer under the state as the executive, the heads of department, or a member of the judiciary." In Montgomery v. State, *supra*, the office of judge of the "police court of Birmingham," was held to be a "civil office of profit under the state." In the Michigan case above cited, after referring to and quoting from the authorities the court said:

"These cases proceed upon the theory that all officers whose duties are prescribed by general law, however trivial, perform their own particular portion of the business of the state. The levying and collection of taxes are state matters. So are all things connected with the state system of schools, construction and maintenance of public highways, and preservation of the peace, and these cases hold the generally conceded doctrine that all who have parts to perform in the general scheme are officers holding under the state, if their engagement rises to the dignity of an office, rather than a mere employment."

Thus it follows that Hugh Hynds, who was elected to the office in question at the general election in 1906, and entered upon the discharge of his duties the first Monday in January, 1907, became entitled to exercise the duties of such office until his successor was duly qualified. It is said in Pruitt v. Squires, (Kan.) 68 Pac. 643, to be "well settled that the indefinite portion of time indicated by the phrase, 'until their successors shall be qualified,' is as much

a part of the term of office as the time during which the officer is entitled absolutely to hold. In the one case, he is entitled to hold as against every one, and in the other, as against every one except such as should come with legitimate credentials. To be sure, this additional time is conditional and defeasible; but until the condition arises which defeats it, it remains a part of the constitutional term." And under a similar provision it was said in Utah that "the actual length of time that such an officer holds his office depends on when his successor is elected and qualified." (State v. Elliott, 45 Pac. 346.) It is, however, immaterial in this case whether the period of holding over after the expiration of the absolute fixed term is to be regarded as a part of the official term or not. It is sufficient to say that the officer is entitled to exercise the duties of the office until his successor is duly qualified. To deprive him of that right a successor must have been legally elected or appointed and duly qualified.

It is contended by counsel for respondent in support of the authority of Anderson, under whose commitment the plaintiff is imprisoned, that Thomas J. Dayton, who had been elected at the general election in November, 1908, duly qualified by filing his oath and bond on November 21, two days before his death, although the bond was not approved until January 8, 1909, and that his death created a vacancy in the office after the commencement of the new term, which was properly filled by the appointment and qualification of Anderson.

By the apparent weight of authority it is held that where one elected to an office dies after he has qualified, though before the commencement of his term, a vacancy is created in the new term which may be filled as by law provided, and the previous incumbent will not be entitled to hold over as against one duly appointed and qualified to fill the vacancy, but that where the person elected dies before having qualified a vacancy is not created, and the incumbent will be entitled to hold over to the time fixed by law for the

regular election or appointment of a successor. (State ex rel. v. Seay, 64 Mo. 89; State v. Dabbs, 182 Mo. 359; Commonwealth v. Hanley, 9 Pa. St. 513; Kimberlin v. State ex rel., (Ind.) 14 L. R. A. 858; State ex rel. v. Bemenderfer, 96 Ind. 374; Gosman v. State ex rel., 106 Ind. 203; State ex rel. v. Albert, (Kan.) 40 Pac. 286; People ex rel. v. Ward, (Cal.) 40 Pac. 538; Bechtel v. Farquhar, 21 Pa. Co. Court, 580; Loring v. Benedict, 15 Minn. 198; People ex rel. v. Lord, 9 Mich. 227; State ex rel. v. Elliott, (Utah) 45 Pac. 346.) There are cases, however, holding that a vacancy authorizing an appointment is caused by the death of the person elected and occurring not only before the commencement of his term but before qualifying. (State v. Hopkins, 10 O. St. 509; Maddox v. York, (Tex. Civ. App.) 54 S. W. 24; Olmstead v. Augustus, 112 Ky. 365.) The present holding in Ohio is that the vacancy in such case is not created at the time of the death of the person elected, but that from the fact of his death a vacancy occurs at the end of his predecessor's term, which is to be filled in the manner provided by law in cases of vacancy occurring at that time. (State ex rel. v. Dahl, 55 O. St. 197.) In New Hampshire a vacancy was held to have been properly declared where the one elected died before the canvass and return of the votes; but this was upon a statute expressly providing that upon the death of a person "chosen" to an office the court might declare it vacant. (State v. Hunt, 54 N. H. 431.)

The principle upon which the death after qualifying of the person elected, though before the commencement of his term, is held to create a vacancy after the comencement of such term is that a successor having been duly elected and qualified the right of the one then in the office to hold over after the expiration of his definite term has ceased and having ceased is not revived by the subsequent death of such successor. The reasoning of the cases holding that a vacancy in the new term is caused by the death before qualifying and before the commencement of the new term of

the one elected for that term is not convincing to our minds. We do not propose, however, to enter upon a discussion of the conflicting decisions, for a determination of the question before us at last depends upon a consideration and construction of the provisions of our constitution and statutes. As above stated the person holding any civil office under the state is entitled by the constitution to continue to exercise the duties of the office until his successor is duly qualified. There can be no doubt but that the "successor" is one legally chosen or selected.

The office in question is one regularly required to be filled by election at general elections, and it is only in case of vacancy that an appointment is authorized. The board of county commissioners of the proper county is authorized to appoint in case of a vacancy occurring in the office of justice of the peace. (Rev. Stat. 1899, Sec. 1225.) Reference has been made to that provision of the statutes that all county officers elected at any general election shall qualify and enter upon the discharge of their respective duties upon the first Monday in January immediately following such election. Section 1223, Rev. Stat. 1899, provides as follows:

"Every county officer provided for by law, shall, before entering upon the duties of his office, and within twenty days after the commencement of the term for which he was elected or appointed, execute and deposit his official bond, as prescribed by law, and every such officer shall, also, within the same time, take and subscribe the oath of office prescribed by Section twenty of Article six of the constitution of Wyoming * * * which oath shall be endorsed on the back of his certificate of election or appointment, and shall be deposited with his official bond."

Sections 4317 and 4318, Revised Statutes of 1899, provide with reference to justices of the peace as follows:

"Sec. 4317. They shall, before entering upon the duties of their respective offices, take the oath required of other county officers, which oath shall be endorsed on the back of their certificates of election or appointment."

"Sec. 4318. They shall give bond in the sum of fifteen hundred dollars payable to the people of the State of Wyoming, with sufficient sureties to be approved by the board of county commissioners, conditioned for the faithful discharge of the duties of their respective offices, and that they will faithfully account for and pay over all moneys which may come into their hands by virtue thereof."

The provisions of these two sections were as originally enacted contained in a single section providing that said justices of the peace shall "before entering upon the duties of their respective offices" take and file the oath required of other county officers, and execute a bond in the sum aforesaid, "with sufficient sureties, to be approved by the board of county commissioners," conditioned as stated in Sec. 4318. (Laws 1895, Ch. 72, Sec. 1.) The·separation of the provisions into two sections was the work of the revision commission. The original act at least aids in the construction to be given the provisions, and we think it clear that the requirement is that the bond shall be given in the manner stated "before entering upon the duties of the office." It cannot be doubted that the giving of the bond is one of the requirements for qualifying.

We are now prepared to consider the section of the statute prescribing the ·events which, when happening, shall cause an elective office to become vacant. Section 381, Revised Statutes of 1899, provides as follows:

"Every elective office shall become vacant on the happening of either of the following events to the incumbent before the end of his term of office. 1. His death. 2. His resignation. 3. His becoming insane or *non compos mentis.* 4. His ceasing to be an inhabitant of the state, or if the office is local, his ceasing to be an inhabitant of the district, town, ward, or precinct for which he was elected. 5. His conviction of an infamous crime or of any offense involving a violation of his official oath. 6. His removal from office. 7. His refusal or neglect to take his oath of office, or to give or renew his official bond, or to deposit

or file such oath or bond within the time prescribed by law. 8. The decision of a competent tribunal declaring his election void."

Whether the office here in question was vacant so as to authorize the appointment of Anderson depends upon the construction to be given Section 381, in connection with the other provisions of the statute above referred to. The appointment of Anderson occurred after the commencement of the term for which Dayton had been elected. The events specified in Section 381 to occasion a vacancy in the office must have happened to the "incumbent." At the time of Dayton's death in November, Hynds was the lawful incumbent and the only incumbent of the office of justice of the peace in and for Laramie precinct. There could not have been two incumbents. The definite term for which Hynds had been elected did not expire until the first Monday in January, 1909, so that when Dayton died, Hynds was occupying the office by virtue of his election, and with the absolute right, if he lived, to continue in the office as against every one until the date of the commencement of the new term. We do not doubt that the term "incumbent" in relation to the 7th event stated in Section 381, viz.: the refusal or neglect to take the oath of office, and give or renew his official bond, refers to one last elected to the office, and whose duty it is before entering upon its duties to take the oath and give a bond. In other words had Dayton lived until the first Monday in January, 1909, for the purpose of determining a vacancy under that provision, he would have been the incumbent referred to. But before that date he had departed this life, and by no process of reasoning is it possible to consider him an incumbent of the office after his death. The seventh clause aforesaid is to be construed as referring to a living person. At the date of Dayton's death, he was not the incumbent of the office, but Hynds was. His death, therefore, did not create a vacancy in the office, unless the doctrine that death after qualifying of one elected to an office causes a vacancy in the new term

thereafter to commence is to be applied, and it is found that by his act of filing his oath and bond on November 21, 1908, he had qualified as of that date.

In several of the states one elected to an office is required to qualify before the time for his induction into the office, and generally within a stated period after his election or the issuance or delivery of a certificate of election; and that seems to have been the rule in those states where the death of one elected after qualifying is held to constitute a vacancy in the term thereafter to commence. And it seems also that in the cases so holding as to an office where such qualification had occurred the acts of qualifying were completed, so that nothing further was required to be done to entitle the one so qualifying to the office at the date of the commencement of his term should he have lived until that time.

Our statute, however, prescribes the time for qualifying as the first Monday in January following the election, or "within twenty days after the commencement of the term" for which the person was elected or appointed. And that it is intended by the statute to fix the date for qualifying at or after the commencement of the term is rendered more plain in the case of the office of justice of the peace by Sction 4328, Revised Statutes of 1899, which provides that "Every justice of the peace in this state, *after qualifying,* is hereby authorized to hold his court for the trial of all actions of which jurisdiction is given him by law, and to hear, try and determine the same according to law." It would hardly be contended that Dayton became authorized after filing his oath and bond in November, 1908, to hold court, and to hear and determine causes as justice of the peace, prior to the first Monday in January, 1909. The section last above referred to seems clearly to indicate the legislative understanding that the time for one elected justice of the peace to qualify is at or after the commencement of his term.

We are not to be understood as denying the right of one elected to an office to take the required oath and execute

his bond, and deposit the same with the proper officer, prior to the date when his term is to commence, or the time fixed by law for qualifying. We assume that may be done. But as qualifying acts they do not become effective until the time fixed by law for their performance. (Worley v. Smith, 81 N. C. 304.) We are not here considering a question of liability upon an official bond filed out of time. It was said in a Nebraska case: "Actions upon bonds given out of time, and direct proceedings to oust an officer for failing to qualify according to law, present very different questions for consideration." (State v. Lansing, 46 Neb. 522.) The question in the case at bar is·whether at the time of Dayton's death he had qualified, so as to put an end to the right of Hynds to hold over after the expiration of his definite term.

Dayton, then, was required to qualify on the first Monday in January, 1909, or within twenty days thereafter, and though we assume that he might take and execute his oath and bond and deposit them before that time, in anticipation of his induction into the office at the time provided by law, his acts in that respect would not operate or become effective for the purpose of qualifying until the time when the law provided that he should qualify. It is useless to inquire into the purpose or reasons for such a statutory provision. It is enough that the legislature has declared when and in what manner qualification shall occur.

Again, as a part of the required qualification it was necessary for the bond given by Dayton to be approved ·by the board of county commissioners. Until that was done he could not rightfully claim the office nor enter upon the duties thereof. (Andrews v. State ex rel., 69 Miss. 740; Rounds v. Bangor, 46 Me. 541.) There was no approval until after his death, and after the commencement of the term for which he was elected. It is hardly necessary to say that a person cannot qualify for an office after his death. It follows that he had not qualified before his death, and the office was left with a lawful incumbent who had been elected and who was

entitled to hold over until his successor was duly qualified, that the death of Dayton did not create a vacancy in the office after the commencement of the term for which he had been elected, and hence that there was no authority for the appointment of Anderson. The acts of the latter, therefore, which are complained of in this proceeding were without lawful authority, and the plaintiff is entitled to his discharge.

BEARD, J., and SCOTT, J., concur.