Argued March 20; action dismissed April 8, 1941

# STATE ex rel. SMITH v. TAZWELL

(111 P. (2d) 1021)

350

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND and ROSSMAN, Associate Justices.

*Ralph H. King* and *Nicholas Jaureguy*, both of Portland (James R. Bain, District Attorney, and Lyndon L. Myers, both of Portland, on the brief), for plaintiff.

*Alfred E. Clark*, of Portland (Malcolm H. Clark and Collier, Collier & Bernard, all of Portland, on the brief), for defendant.

RAND, J. This is an original action in the nature of a quo warranto proceeding brought under section 8-804, O. C. L. A., to try title to the office of judge of the circuit court, department No. 7, of the state of Oregon for Multnomah county. The action was brought in the name of the state by the district attorney of Multnomah county on relation of Newton C. Smith, who claims title to the office under appointment by the governor.

It is alleged in the amended complaint that Judge George Tazwell, the defendant herein, was elected

judge of said department No. 7 of the circuit court at the general election held in November, 1934, for a term of six years, and that he assumed the duties of the office under such election on the first Monday in January, 1935; that, at the general election held in November, 1940, he was again a candidate for election to said office and was defeated at the polls by Judge John A. Mears, who died on November 9th, four days after the election as the result of injuries received in an automobile accident, and that his death occurred before the votes cast at said election had been canvassed and before any certificate of election had been or could be issued; that on January 6, 1941, the relator was appointed to the office of judge of said department of the circuit court by the governor; that he thereupon took the oath of office and demanded surrender of the office by the defendant Tazwell and was refused.

To this complaint the defendant has demurred, contending that, under Article XV, section 1, of the state constitution, he is entitled to hold the office until his successor has been elected and qualified. That provision reads as follows:

"All officers, except members of the legislative assembly, shall hold their offices until their successors are elected and qualified."

Before any judge of the circuit court can enter upon the duties of his office, he must, under section 21 of the original Article VII of the constitution, take and subscribe to the following oath and transmit the same to the secretary of state:

"I, ———, do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the state of Oregon; and that I will faithfully and impartially discharge the duties of a

judge of the supreme and circuit courts of said state, according to the best of my ability, and that I will not accept any other office, except judicial offices, during the term for which I have been elected."

Section 3 of Article XV also provides that:

"Every person elected or appointed to any office under this constitution shall, before entering on the duties thereof, take an oath or affirmation to support the constitution of the United States, and of this state, and also an oath of office."

■ Hence, the taking and transmission of the oath above referred to are necessary formalities for the qualification of all circuit judges before they can enter upon the duties of their offices. That this requirement applies to circuit judges as well as to the judges of the supreme court, see *State v. Ware*, 13 Or. 380, 390, 10 P. 885. Also see *Ekwall v. Stadelman*, 146 Or. 439, 30 P. (2d) 1037, holding to the same effect.

■ It is admitted that, because of his untimely death, Judge Mears failed to take this oath and that he never became qualified to assume the duties of a circuit judge. Hence, under the plain and express provisions of section 1 of Article XV, no vacancy could occur under the constitution so long as Judge Tazwell, the then incumbent, continued to hold the office. The words "until their successors are elected and qualified" necessarily require that the successor should be both elected and qualified before a vacancy could occur in an office in which there was an incumbent holding over at the time. Vacancy in office means, as said by Mr. Justice McArthur in *State of Oregon v. Johns*, 3 Or. 533, 537, the want of an incumbent at the time. In that case, the court pointed out that the purpose of section 1 of Article XV was to prevent an interregnum in office

after the expiration of a term and that that was fully provided for by section 1, Article XV.

In *State ex rel. Everding v. Simon*, 20 Or. 365, 378, 26 P. 170, the court said:

"* * * public policy requires that the duties of the office be performed, and it is better that the incumbent should continue in the office and in the performance of its duties than that an interregnum should occur."

By use of the word "interregnum", the court, of course, meant that, in the interests of the public, the functions of government ought not be suspended for any period of time.

In the case last cited, this court said:

"* * * it is clear that when by the constitution or law, officers are elected or appointed for a term, and until their successors are elected and qualified, they are thereby authorized to hold and exercise their offices until their successors are duly elected or appointed under some existing provision of law. The right to hold over is derived from the same constitution that imposes the limitation upon the legislature in the creation of the office. The constitution permits a legislative tenure for a fixed term not exceeding four years, and if at the expiration of that period, from any cause such as failure of the legislature to provide for the election of his successor (People ex rel. v. Hammond, 66 Cal. 654); or of the regular appointing power to make an appointment (State v. Howe, 25 Ohio St. 588); or of the electoral body to elect (State v. Harrison, 113 Ind. 434; People v. Oulton, 28 Cal. 44; People v. Stratton, 28 Cal. 382; State v. Lusk, 18 Mo. 333); or the death of the person elected to fill the office before he has qualified (Commonwealth v. Hanley, 9 Pa. St. 513), no successor has been elected or appointed under an existing law, the incumbent holds over by virtue of the provisions of the constitution until he is superseded

by a duly qualified successor who shall have been elected or appointed in the manner provided by law. (People v. Woodruff, 32 N. Y. 355; People v. Batchelor, 22 N. Y. 128; Mecham on Office § 397; State v. Davis, 45 N. J. L. 390; People v. Tilton, 37 Cal. 614.)''

This question was again presented in *Eddy v. Kincaid*, 28 Or. 537, 560, 41 P. 157, where it was contended that the failure of the legislature to elect plaintiff's successor operated to create a vacancy in the office and that the plaintiff was not entitled to hold over after the expiration of the term for which he had been appointed. In disposing of that question, the court said:

''* * * this question is settled by the express declaration of the constitution of this state and of the law under which he was elected.''

Then, quoting section 1 of Article XV, the court said:

''* * * It is thus declared, both in the constitution and the act itself, that the incumbent of the office shall hold until his successor is elected and qualified. The legislature having failed to elect plaintiff's successor, it necessarily follows, if we are to give force and effect to the plain and express provisions of the constitution and the law, that he is entitled to hold the office and to receive its emoluments until such time as his successor shall be duly elected. And to this effect are the authorities under similar provisions of law.''

In *State v. Compson*, 34 Or. 25, 30, 54 P. 349, this court said:

''* * * But when the constitution in one clause inhibits the legislature from creating an office the tenure of which shall be longer than a specified number of years, and in another provides that such officer shall hold until his successor is qualified, the two provisions are to be read and interpreted together, and the result

is that the legislature is inhibited from creating an office the tenure of which shall be for a longer period than the time specified in the constitution; but if, at the expiration of that period, no successor has been elected and qualified, the incumbent holds over by the paramount right of tenure, which the constitution supplies, until he is superseded by a qualified successor, appointed or elected under some provision of law, and a failure of the particular authority to elect his successor does not create a vacancy in the office: State ex rel. v. Harrison, 113 Ind. 434, 3 Am. St. Rep. 663, 16 N. E. 384.''

See also *Baker City v. Murphy*, 30 Or. 405, 415, 42 P. 133, 35 L. R. A. 88, where the court said:

''In State v. Sullivan, 45 Minn. 309, 11 L. R. A. 272, 22 Am. St. Rep. 729, 47 N. W. 802, it is held, that, 'the incumbent of an office, the term of which is for a specified period, ''and until his successor is elected and qualified,'' is entitled to retain the office after the lapse of the specified period, in the event of the election of another person to succeed him who is ineligible.' ''

In *State v. Kellaher*, 90 Or. 538, 557, 177 P. 944, Mr. Justice HARRIS, speaking for the court, said:

''It must be admitted, of course, that Kellaher holds over until his successor is elected and qualified; and hence if no person has been legally elected for the so-called short term, then Kellaher would hold until and including June 30, 1919.''

■ From these decisions, it is settled law in this state that public officers continue in office after the expiration of their official terms until their successors are duly qualified, and that this provision of the constitution is applicable to all public officers of this state, whether elective or appointive. That our decisions are in accord with the decisions of other jurisdictions having similar constitutional provisions, see 22 R. C. L.,

Public Officers, sections 257 and 258, where the question is fully discussed. Among other things, it is there said:

"* * * An officer is not prevented from continuing to discharge the duties of his office after his term where no successor has been chosen, even by a provision of the constitution limiting the term of office and making an incumbent ineligible to re-election, or declaring that the duration of an office should not exceed a given number of years."

citing in support of the first proposition, *Carr v. Wilson*, 32 W. Va. 419, 9 S. E. 31, 3 L. R. A. 64, and of the last proposition, *Gemmer v. State*, 163 Ind. 150, 71 N. E. 478, 66 L. R. A. 82; *Jones v. Roberts County*, 27 S. D. 519, 131 N. W. 861, 34 L. R. A. (N. S.) 1170. Continuing the authors say:

"Apart from any constitutional or statutory regulation on the subject there seems to be a general rule of law that an incumbent of an office will hold over after the conclusion of his term until the election and qualification of a successor. Yet in all cases the right of an officer to hold over after the expiration of his term exists only in cases where there is no legally elected and qualified successor, for when the rights of the successor vest, those of the incumbent terminate."

In the last section, the authors point out that:

"The purpose of constitutional or statutory provisions authorizing public officers to hold over is to prevent a hiatus in the government pending the time when a successor may be chosen and inducted into office. Where a constitutional or statutory provision exists, permitting or commanding an incumbent of an office to continue in the discharge of his duties until his successor is qualified, the expiration of the official term not only does not create a vacancy, (citing State v. Howe, 25 Ohio St. 588, 18 Am. Rep. 321; State v. Hen-

derson, 4 Wyo. 535, 35 P. 517, 22 L. R. A. 751), but the period between the expiration of his term and the qualification of his successor is as much a part of the incumbent's term of office as the fixed statutory period. (Citing Kimberlin v. State, 130 Ind. 120, 29 N. E. 773, 30 A. S. R. 208, 14 L. R. A. 858; Grand Haven v. United States etc. Fidelity Co., 128 Mich. 106, 87 N. W. 104, 92 A. S. R. 446; Baker City v. Murphy, 30 Or. 405, 42 P. 133, 35 L. R. A. 88; Peterson v. Benson, 38 Utah 286, 112 P. 801, Ann. Cas. 1913B 640, 32 L. R. A. (N. S.) 949; Ballantyne v. Bower, 17 Wyo. 356, 99 P. 869, 17 Ann. Cas. 82.) This is true even where a person is elected his own successor. Hence the incumbent of an office the term of which is for a specified period, 'and until his successor is elected and qualified,' is entitled to retain the office after the lapse of the specified period, in the event of the election of another person to succeed him who is ineligible, or in the event of a failure of the proper appointing authority to make any appointment whatever. (Citing State v. Harrison, 113 Ind. 434, 16 N. E. 384, 3 A. S. R. 663.)''

The power of the governor to fill a vacancy is conferred by section 16, Article V of the constitution, which provides:

"When during a recess of the legislative assembly a vacancy shall happen in any office, the appointment to which is vested in the legislative assembly, or when at any time a vacancy shall have occurred in any other state office, or in the office of judge of any court, the governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified; * * *".

In referring to this appointive power, the court said, in *State v. Johns,* supra:

"* * * The power reposed in the executive by section 16 of article 5 of the constitution is not absolute, but limited and qualified, and was only reposed in him for the purpose of filling vacancies in office, until such

times as the people, the repository of all power, could act thereon and fill them, as at the recurrence of a general election. The persons so appointed merely hold office temporarily, so that public business may not be retarded or disturbed by the death or resignation of the elected incumbent. As to the appointing power of the governor; it appears from the constitution and from our system of government, that it was the manifest intention of the framers and founders thereof, to restrict the same within the narrowest limits.''

■ It is clear that the governor has no power to create a vacancy in a judicial office nor to appoint any person to an office not actually vacant at the time. It is also clear that, under the plain provisions of the constitution, as interpreted by this court in the decisions cited above, there was no vacancy in the office of circuit judge at the time the appointment in question was made.

Counsel for the relator, however, contend that section 1 of Article XV has no application to a judicial office. They argue that, both in its original and amended form, Article VII is and was intended to be a complete statement of the fundamental law so far as it relates to the judiciary, and that section 4 of Article VII, in its original form, was intended to govern this situation. That section provided:

''Every vacancy in the office of judge of the supreme court shall be filled by election for remainder of the vacant term, unless it would expire at the next election, and until so filled, or when it would so expire, the governor shall fill the vacancy by appointment.''

The meaning of that section was never entirely clear. In *State v. Ware*, supra, two members of the court held that it meant one thing and the third member that it meant something entirely different, but, regard-

less of its meaning, that section neither created nor defined what would constitute a vacancy in the office of a judge but merely provided the manner in which, if a vacancy occurred, it should be filled. Hence, it would seem to have no application to the question presented here.

The language of section 1 of Article XV, "All officers, except members of the legislative assembly, shall hold their offices until their successors are elected and qualified", expressly includes the office of circuit judge and can be given no other meaning than that of including circuit judges. To contend, as was done upon the argument here, that it was intended to include county judges and justices of the peace only and that it had no reference to supreme and circuit court judges is contrary to the very terms of the constitution.

The relator also contends that, under section 1 of Article VII, as amended, the term of a circuit judge is six years, and that one holding over for want of a successor is holding under his original term and, hence, any statute extending the term for more than six years would be unconstitutional. We are not dealing with the statute but with the express terms of the constitution which provides that the incumbent of an office shall hold over until his successor is elected and qualified. Moreover, the amendment of Article VII did not change the length of the term of a circuit judge from what it had been formerly. As pointed out in *State v. Ware*, supra, the legislature of this state at the September session, 1878, passed an act providing for the election of supreme and circuit judges in distinct classes, which contained the following provision:

"There shall be elected on the first Monday in June, 1880, a circuit judge in each of the judicial dis-

tricts, as they now exist in this state, whose terms of office shall commence on the first Monday in July, 1880, and continue for six years, and until their successors are elected and qualified; and at the general election in 1886, and every six years thereafter, there shall be elected a circuit judge in each of the said judicial districts, whose terms of office shall commence on the first Monday in July thereafter, and continue for six years, until their successors are elected and qualified.''

■ Hence, the amendment of Article VII did not change the length of the term of circuit judges from what it had been formerly. As stated by Judge Cooley:

''Where a constitution is revised or amended, the new provisions come into operation at the same moment that those they take the place of cease to be of force; and if the new instrument re-enacts in the same words provisions which it supersedes, it is a reasonable presumption that the purpose was not to change the law in those particulars, but to continue it in uninterrupted operation.'' Cooley's Constitutional Limitations, 7th ed., p. 96.

■ Moreover, as stated in *Re McCormick's Estate*, 72 Or. 608, 618, 143 P. 915:

''* * * There is nothing in the new form of Article VII of the Constitution indicating an intention to repeal or amend any other section of that instrument.''

■ There is but one other objection urged by the relator that needs to be considered. The relator contends that the word ''elected'', as used in section 1 of Article XV, means elected or appointed. It is a matter of common knowledge that many of the officers of the state are appointed and not elected to their respective offices and most of them, if not all, are appointed for a defi-

nite term. In such case, they, like all elective officers except members of the legislature, hold over until their successors are appointed and qualified. There may be appointive officers who hold their offices only during the pleasure of the appointing power, and not for a fixed term. In such case, of course, section 1 of Article XV would not apply. Whether there are such officers or not we will not stop to consider, but all officers elected or appointed for a definite term hold their offices, under section 1 of Article XV, until their successors are elected or appointed and qualified. Such is the plain mandate of the constitution, and no officer of the state has any power to disregard it.

■ The contention that, if there is no vacancy in the office in question here, Judge Tazwell will hold for a new term of six years is wholly unfounded. He will hold until his successor is elected and qualified and this will continue only until after the next election.

The appointment by the governor of the relator to fill the supposed vacancy in the office of circuit judge was made to prevent a vacancy in the office if one existed, but since there was no vacancy in the office, the appointment was ineffectual. The demurrer to the complaint will, therefore, be sustained, and a judgment will be entered here dismissing the action. It is so ordered.